*Hartford,*
*June, 1849.*
———
Barnes
*v.*
The State.

———◆———

## BARNES *against* THE STATE:

### IN ERROR.

A justice of the peace has jurisdiction of the offence of selling spiritous liquor to a common drunkard, though such offence is punishable by a greater fine than seven dollars.

And two or more counts for distinct offences, may be included in the same information, and the fine prescribed by statute, imposed on the defendant, under each count.

Where, in a prosecution for selling spiritous liquor to a common drunkard, the person to whom the liquor was alleged to have been sold, was called, by the prosecutor, to prove the sale; and having sworn to it, was asked, on cross-examination by the defendant, if he was a common drunkard; and to this question he objected; it was held, that he was not bound to answer it.

To sustain such prosecution, it is not necessary to prove, that the defendant *knew* that the person to whom the liquor was sold, was a common drunkard.

Where it appeared in such prosecution, that the sale complained of was made by the clerks of the defendant; and he offered evidence to show, that he had given such clerks specific directions to sell no liquors to common drunkards; it was held, that such evidence was admissible. [Two judges dissenting.]

THIS was a complaint, made by a grand-juror, to a justice of the peace, containing three counts.

The first count alleged, that *Alphonso Barnes*, on the 15th of *January, 1849,* at *Bristol,* did sell, and offer to sell, by

himself and an agent, wines, spiritous liquor and other intox-
icating beverage, to one *Boylston Whitney* of said *Bristol,*
he being then and there addicted to habits of intoxication ;
and said *Alphonso Barnes* then and there knowing him to be
so addicted ; and said *Boylston Whitney,* being also then and
there a common drunkard.

The second count was like the first, except that it alleged
the sale on the 19th of *February*, 1849.

The third count alleged, that said *Alphonso Barnes,* not
being a licensed taverner, on the 1st day of *December*, 1848,
did sell, and did authorize and permit to be sold, to a person
unknown by name to the grand-juror, wine and spiritous
liquors, in the house, store, shop and dependencies of him,
the said *Barnes,* being the place where the same was so
sold ; and did permit and suffer the same, so sold, to be
drunk on the premises aforesaid.

The defendant pleaded *Not guilty.* On the trial before
the justice, the grand-juror abandoned the last count ; and a
trial was had upon the two first. The justice found the de-
fendant *guilty,* on both those counts ; and imposed a fine of
ten dollars, payable to the town treasury, with costs of pros-
ecution, on each count.

From this judgment the defendant appealed to the county
court ; before which the cause was tried, *March* term, 1849.
The jury found the defendant *guilty ;* and the court there-
upon imposed upon him a fine of twenty dollars, and the
costs of prosecution.

The defendant then filed a bill of exceptions, as the foun-
dation of a writ of error. From this the following facts
appeared.

After the cause was brought into court, by appeal of the
original defendant from the judgment of the justice, and
was entered in the docket, by the attorney for the state, and
before any plea was filed, the defendant moved the court to
dismiss the cause from the docket, and to take no further
cognizance or jurisdiction thereof, on the ground that it was
not legally brought to the county court, and was not then
legally pending before it, inasmuch as the justice of the peace,
who tried the cause, had no authority or jurisdiction to im-
pose a fine of ten dollars on the defendant, his jurisdiction
being limited by law to the imposition of fines not exceeding

seven dollars; and inasmuch as, if he could legally impose a fine of ten dollars, he had no authority or jurisdiction, under one and the same complaint, to impose two fines of ten dollars each, amounting to the sum of twenty dollars. The court decided, that the cause was legally pending in that court, and refused to dismiss it from the docket.

A trial of the cause was then had upon the plea of *Not guilty.*

To prove the sale, alleged in the complaint, the only witness introduced on the part of the state, was *Boylston Whitney*, the person to whom, as the complaint alleged, the sale was made. On cross-examination of this witness, the counsel for the defendant enquired of him, for the purpose of disproving that part of the complaint which averred that he was a common drunkard, if he were a common drunkard. This enquiry the witness and the attorney for the state objected to, on the ground that the witness could not be required to answer an enquiry, when such answer might tend either to degrade him, or to convict him of a violation of the law. The court sustained the objection, and refused to permit the question to be put.

In the course of the examination of the defendant, who testified in his own favour, (*a*) his counsel offered to prove, by his testimony, that he had given his clerks specific directions to sell no liquors to persons addicted to habits of intoxication, nor to any common drunkard; the defendant being a merchant, keeping and retailing spiritous liquors. This evidence was offered, as conducing to prove, that his clerks, in making such sale, did not act as his agents; it being agreed that the sale complained of, was made by his clerks, in his absence.

The attorney for the state objected to the admission of this evidence, on the ground, that if the sale were in fact made by the clerks, his instructions to them were irrelevant.

The court, without attempting to decide, whether the principal, if he gave instructions to his clerks, not to sell to a

(*a*) By an act passed *May* session, 1848, it was provided, "that no person should be disqualified as a witness, in any suit or proceeding at law or in equity, by reason of his interest in the event of the same; or by reason of his conviction of a crime; but such interest or conviction may be shown, for the purpose of affecting his credit."

particular individual, would be exonerated in case they disobeyed him, was of opinion, that if vendors of spiritous liquors could avoid responsibility, by a general direction not to sell to any intemperate men, it would, in effect, abrogate the statute ; and that such a construction should be given to it, as would sustain, and not destroy it ; and therefore, the court excluded the evidence.

In the progress of the trial, the attorney for the state abandoned all that part of the complaint, which contained the averrment that *Whitney*, at the time of the sale, was addicted to habits of intoxication, and that this was known to the defendant ; and so far as the character of *Whitney* was concerned, relied solely upon that part of the complaint, which averred, that *Whitney*, at the time of the sale, was a common drunkard.

The defendant claimed, that he could not be convicted, under this complaint, if, at the time of the sale, he was ignorant that *Whitney* was a common drunkard ; and to prove such ignorance, he offered his own testimony.

The attorney for the state objected to its admission, on the ground that if *Whitney* was, at the time, a common drunkard, and the sale was in fact made to him, the defendant was liable, whether he knew him to be such drunkard, or not; and that the evidence was therefore irrelevant.

The court sustained the objection, and excluded the evidence.

The defendant claimed, that this being a criminal proceeding, the jury were the judges both of law and fact, and asked the court so to instruct them ; and also to instruct them, that if the defendant was ignorant that *Whitney* was a common drunkard, he could not be convicted.

But the court charged the jury, that if a man was a common drunkard, the law supposed him to carry such evidence of the fact upon his person, that every body should take notice of it; and that no other evidence was required. The court further charged the jury, that they were judges both of the law and the fact; but in respect to the law applicable to such a case, they ought to be governed by the opinion of the court.

The jury having returned a verdict of *guilty*, the court

*Hartford,*
*June, 1849.*

Barnes
*v.*
The State.

imposed on the defendant, a fine of twenty dollars; and he thereupon brought a writ of error in the superior court.

*T. C. Perkins,* for the plaintiff in error, contended, 1. That the justice who originally tried this cause, had no authority or jurisdiction, under one complaint, to impose two fines of ten dollars each, *i. e.* twenty dollars. By the general law, a justice of the peace has jurisdiction and cognizance only of offences punishable by fine not exceeding *seven* dollars. *Stat.* 171. §122. (ed. 1838.) Under the statute of 1846, the penalty for a violation of the third section, is *ten* dollars; and jurisdiction of the offence is given, by the fourth section, to a justice of the peace. *Stat. of* 1846. 46,7. But no law authorizes a justice, on one presentment of the offence in question, to impose a greater fine than ten dollars, whether there be one or more counts in the information. There is nothing more in this case than there is in every case, to show that the several counts are for *distinct* offences. 2 *Sw. Dig.* 383. The justice having exceeded his jurisdiction, there was no judgment which could be the subject of ulterior proceedings; and consequently, the cause should have been erased from the docket.

2. That the county court should have permitted the enquiry to be made of *Whitney,* whether he was a common drunkard. He had volunteered to testify in the cause. *Dixon* v. *Vale,* 1 *Car. & Pa.* 278. (11 *E. C. L.* 391.) *East* v. *Chapman,* 2 *Car. & Pa.* 570. (12 *E. C. L.* 268.) *Chamberlain* v. *Willson,* 12 *Verm. R.* 491. *The State* v. *K.* 14 *N. Hamp.* 562.

3. That the court should have admitted proof of the instructions given by the defendant to his clerks. A sale by the servant or agent, is only *prima facie* evidence of the assent of the principal. If his express *dissent* be shown, he is not liable *criminaliter.* To charge the master *criminally* for acts done by his servant, there must be such a direct participation in the act, or such assent and concurrence therein, as would involve him morally in the guilt of the action. *Commonwealth* v. *Nichols,* 10 *Metc.* 259. 260.

4. That there could be no conviction of the defendant, unless he *knew* that *Whitney* was a common drunkard.

Without such knowledge, the doing of the act prohibited, was not *criminal*. A criminal *intent* is essential to constitute a crime. *Actus non facit reum, nisi mens sit rea. Myers v. The State*, 1 *Conn. R.* 502.

*R. G. Hubbard* (state's attorney,) and *Hooker,* for the defendant, in error, contended, 1. That the justice acted legally in imposing two fines on the two counts. Two or more distinct offences of the same general nature, may be included in one indictment. *Carlton* v *The Commonwealth,* 5 *Metc.* 532. *The State* v. *Priester,* 1 *Cheves,* 103. *Wright* v. *The State,* 4 *Humph.* 194. *The State* v. *Kirby,* 7 *Miss.* 317. No reason can be shown why a justice may not impose separate fines on separate counts, as well as a higher court.

But the defendant cannot make this question here, since the judgment of the justice was appealed from, and therefore vacated. So long as it was vacated, it can make no difference whether it was erroneous, or not.

2. That the county court ruled correctly as to the question put to *Whitney,* whether he was a common drunkard. The answer would have exposed him to disgrace, and to a criminal charge, it being a crime to be common drunkard; (*Stat.* 556. §53.,) and he declined to answer the question. 1 *Greenl. Ev.* 501.

3. That it was not necessary to prove, that the defendant *knew Whitney* to be a common drunkard.

In the first place, the statute does not require it, but, by clear implication, dispenses with such proof. *Stat.* 600. §13.

Secondly, on general principles of law, such proof is not necessary. A man seduces a female under twenty-one years of age; (*Stat.* 238. §83.) must it be proved, that he knew her to be under that age? A man in a house of ill fame has illicit intercourse with a married woman; in a prosecution for adultery, must it be proved, that he knew her to be a married woman? A taverner sells spiritous liquor to a minor or apprentice; (*Stat.* 597. §3.) must it be proved, that he knew that he was a minor or apprentice?

4. That the evidence that the defendant had directed his clerks not to sell to common drunkards, was properly rejected. If this evidence is admissible for any purpose, it must effect a repeal of the statute, as it would be impracti-

*Hartford,*
*June, 1849.*

Barnes
*v.*
The State.

cable for the state to disprove the fact of such direction, or to prove that it was given collusively. The statute itself seems to intend something more than the common liability of a person for the criminal acts done by his direction; for this liability would have been complete without the clause " by an agent or otherwise." *Stat.* 599, 600. §11. 13. The legislature intended, that the mere putting of an agent into a shop for the retailing of liquors, should make the principal criminally responsible for the acts of the agent in violating the law, even though in those acts the agent might transgress his express authority.

But on general principles of law, such evidence would be inadmissible.   *Rex* v. *Gutch* & al. 1 *Moo.* & *Malk.* (22 *E. C. L.* 354.)   2 *Stark. on Slander,* 29. *in notis.*

ELLSWORTH, J.   We have no doubt, that the justice who tried this cause, had jurisdiction to impose as many fines of ten dollars each, as there are distinct counts in the information.   The statute of 1846, and the revised statutes of 1849, expressly give this jurisdiction to the justice, so that the general limitation of a justice to seven dollars in criminal cases, is not the rule in this instance.   The legislature have seen fit to make this modification of the general law ; and we perceive no valid objection to carrying out their declared will.

Nor can we doubt that a justice of the peace having jurisdiction, may, like the higher courts, permit several counts, for the same or distinct offences, to be put into one information.   The person complained of, could gain nothing by a different practice.

Nor can we doubt that the county court ruled correctly, in excusing *Whitney* from answering as to his being a common drunkard.   No witness is bound to answer, when the answer may criminate himself, which is the case here, since a common drunkard may be confined to hard labour in a work-house.

So we think the county court was correct in holding, that knowledge of one's character, as a common drunkard, is not essential, to subject the offender to the penalty of the law. The language used is too clear and too positive to be mistaken ; nor can we mistake the evil aimed at, by the legislature. It may be noticed too, that while knowledge is declared to

be necessary, when liquor is sold to a person addicted to habits of intoxication, this qualification of knowledge is dropped, in the very next clause, " selling to a common drunkard," as if the plea of ignorance should not avail, in the latter case. Nor is this unusual or unnecessary severity.  No licensed taverner shall suffer minors, apprentices or servants, to sit drinking in his house, or suffer any of the inhabitants of the town to sit there tippling; nor may he sell to a student of any college.  Can the taverner plead ignorance?  A female under the age of twenty-one years, is seduced, or is enticed away; is ignorance of her minority any defence?  Or if adultery is committed, can the adulterer plead his ignorance that the woman was married?

The case of *Myers* v. *State*, 1 *Conn. R.* 502., to which reference has been made, is not inconsistent with these views. In that case, there was an exception to the thing prohibited; and the court held, that an honest endeavour to keep within the exception, was sufficient to exculpate the accused.

But in another ruling of the court, we are constrained to say, that there is error.  The accused, (a statute witness,) was offered to testify, that the sale was made without his consent, and contrary to positive instructions given to his clerk, by whom the sale was made, if made at all.  The accused insists, that the word " *agent,*" shall be taken in its common acceptation; that the relation of principal and agent is matter of *fact*, to be left to the jury, and not an inference of law for the court.  If he is right, the testimony should have been received, as conducing to prove there was no agency in fact. The true enquiry then, is, what does the statute mean, by the term " *agent?*"  A just interpretation must be our guide.  If construed either way, it will not, we think, exceed the power of the legislature, though we should be induced, from necessity only, to put upon a common word, an uncommon and technical meaning, particularly in the construction of a penal statute.  It certainly does not mean, that a person is another's agent in every transaction, because he sustains towards him that general relation.  Nor does it mean, every one who professes to represent another; nor every one who acts as clerk of another in his shop, or office, or business; nor every one who sells liquor on his employer's premises, without, and contrary to, his instructions.  Obviously, courts can at-

*Hartford,*
June, 1849.

Barnes
*v.*
The State.

tach no other than the usual meaning to the word " agent," unless unequivocally forced to it, by the clear language or construction of the statute. An agent is an actual *bona fide* representative of his principal, in the particular transaction, with his consent or concurrence. What shall be sufficient evidence of it, in any case, does not belong to the present enquiry : the relation must be made out by proof, more or less particular, according to circumstances. We speak only of criminal cases ; for we admit, that in civil matters, to prevent imposition or fraud, the relation of principal and agent is assumed, by courts, to exist, where it does not in truth exist. We are confident, this statute has not introduced a new principle of law into our criminal code ; but this word " agent," is used, in order to guard against a too technical construction of a criminal statute ; a caution not really needed in this case, but very natural with such men as make our laws.

Besides, it must be remembered, that selling spiritous liquor, is, generally, a *lawful* business : it becomes unlawful only in particular cases. A grocer, a druggist, a physician, may sell it for medicinal purposes ; and for other purposes, if it is not to be drunk on the premises, and is not sold to common drunkards and persons addicted to habits of intoxication. Within these limits, he may direct his clerk, student or servant, to act for him, and forbid him to go further. The sincerity of the order must be judged of, by the jury : it *may* be sincere and proper, and might have been in this case : at any rate, we cannot say, that *per se* it *must* have been otherwise.

In *Commonwealth* v. *Nichols*, 10 *Metc*. 259. 262, 3. the supreme court of *Massachusetts*, in a prosecution on their statute, for selling spiritous liquors, hold this language : " We think that a sale by the servant, in the shop of the master, is only *prima facie* evidence of such sale by the master as would subject him to the penalty for violating the statute forbidding the sale of spiritous liquors without license ; that the relation of these parties, the fact that the defendant was in possession of the shop, and was the owner of the liquor, and that the sale was made by his servant, furnish strong evidence to authorize and require the jury to find the defendant guilty. But we cannot say, that no possible case

can arise in which the inference from all these facts may not be rebutted, by proofs : unexplained, they would be sufficient to convict the party. So too, it should be understood, that merely colourable dissent, or a prohibition not to sell, however publicly or frequently repeated, if not made *bona fide*, will not avail. But if a sale of liquor is made by the servant, without the knowledge of the master, and really in opposition to his will, and in no way participated in, approved or countenanced by him ; and this is clearly shown, by the master ; he ought to be acquitted."

We are aware, as already intimated, the master is sometimes made responsible civilly, for his servant's misconduct. This responsibility may grow out of an express or implied undertaking that the thing to be done shall be well done ; or out of that great principle of vigilance imposed upon a master, that he must see his business is conducted so as not to injure others ; or that his servants shall be duly attentive and prudent. But the master is never liable criminally for acts of his servant, done without his consent, and against his express orders. The liability of a bookseller to be indicted for a libel sold from his store, by his clerk, is nearest to it. But the character of those cases has not been always understood. If carefully examined, they will be found to contain no new doctrine. The leading case is *Rex* v. *Almon*, 5 *Burr*. 26. 86. Other cases followed, as may be seen, 2 *Stark*. on *Slander*, 34. (2d *ed*.) 1 *Hawk*. c.7 3. §10. *Rex* v. *Walter*, 3 *Esp. R.* 21. *Rex* v. *Gutch* & al. 1 *Moody &* *Malk*. 437. *Attorney General* v. *Siddon*, 1 *Crompt. & Jerv*. 220. 1 *Trew*, 41. 2 *Crompt. & Jerv*. 493. 2 *Trew*, 523. But having examined these cases, we speak with confidence, that they contain no new doctrine. They make a sale in the master's store *high*, and unexplained, decisive evidence of his assent and coöperation ; but they will not bear out the claim that a bookseller is liable, at all events, for a sale, by his general clerk. Lord *Mansfield* said, in *Rex* v. *Almon*, "the master may avoid the effect of the sale, by showing he was not privy, nor assenting to it, nor encouraging it." So in *Starkie*, it is said, that the defendant, in such cases, may rebut the presumption, by showing that the libel was sold

contrary to his orders, or under circumstances negativing all privity on his part.

We advise that there is manifest error.

In this opinion STORRS and HINMAN, Js. fully concurred.

CHURCH, Ch. J. and WAITE, J., dissented on the last point; but concurred on the other points.

Judgment to be reversed.