185 P.2d 528

SAKRISON et al. (ARIZONA HOTEL ASS'N, Inc., et al., Interveners) v. PIERCE et al.

No. 5000.

Supreme Court of Arizona.

Oct. 14, 1947.

**164**

Arthur M. Davis and D. Kelly Turner, both of Phoenix, for appellant Employment Security Commission.

Cunningham & Carson, of Phoenix, for appellant Westward Ho Hotel Co.

Jennings, Strouss, Salmon & Trask, of Phoenix, for appellant in intervention Arizona Hotel Ass'n.

F. Britton Burns, of Phoenix, for appellant in intervention Arizona Restaurant Ass'n, Inc.

Darrell R. Parker, of Phoenix, for appellees.

UDALL, Justice.

As a result of a labor dispute existing between the Westward Ho Hotel Company and the Hotel & Restaurant Employees & Bartenders Union, Local 631, a strike was called, which went into effect on November 7, 1946. Ultimately 105 of the striking employees filed claims for unemployment compensation under provisions of art. 10, ch. 56-1001 et seq., A.C.A.1939, as amended by ch. 124, Laws 1941. Their claims were heard before the Principal Claims Deputy who rendered his decision authorizing payment of unemployment compensation benefits. On appeal, by majority vote, the Employment Security Commission reversed the Deputy and denied the claims, whereupon an appeal was taken to the Superior Court of Maricopa County. There, after hearing was had, judgment was entered reversing the decision and order of the Commission and directing that plaintiffs be paid the benefits provided by law. This appeal by the Commission, the Hotel Company and certain intervenors is from that judgment. The facts are not in dispute; the case involves only questions of law.

Primarily the question is whether under the proper interpretation of our Employment Security Act workmen who went out on strike that failed to effect, except temporarily, a stoppage of work at the employer's hotel are entitled to unemployment compensation for the period subsequent to the date that the hotel resumed normal operations.

Because almost every word in certain of the more controversial sections of employment security acts in the various states has been the subject of court litigation and interpretation, it is important at the outset to clearly delimit the boundaries of the present dispute. Plaintiffs do not question the existence of a "labor dispute," nor do they deny their participation therein. It is admitted that coincident with the commencement of the strike a picket line was established at the hotel entrances which is still in effect. They make no claim for com-

pensation for the thirteen-day period during which the strike forced the hotel to drastically curtail its service to its patrons. They limit their claim for compensation to the period after the hotel had fully resumed operations by successfully replacing plaintiffs with other employees. It is stipulated that a stoppage of work has not existed at the employer's premises since November 19, 1946, and

"There is no contention that the dispute was caused by the failure or refusal of the employer to conform to the provisions of any agreement or contract between the employer and employees, or any violation of the laws of the State of Arizona, or of the United States pertaining to hours, wages or other conditions of work."

Appellants' (defendants' and intervenors') sole assignment is that the trial court erred in adjudging appellees (plaintiffs) to be entitled to unemployment compensation upon their respective claims for the reason that said claimants were not "unemployed" within the meaning of the Arizona Employment Security Act. While this assignment would seem to limit the scope of inquiry, yet in the briefs three other points are raised which it is urged would bar compensation, to wit: (a) That plaintiffs' unemployment, if such be found to exist, was not involuntary, and therefore not compensable by the Act; (b) that employees out on strike are not "available for work" under the terms of sec. 56-1004(c), and are, therefore, not eligible for compensation; and (c)

that the term "stoppage of work" set forth in the statutory disqualification provision, sec. 56-1005(d) (hereinafter quoted), means the cessation of work by the employee rather than cessation or substantial curtailment of the operations of the employer's establishment. We shall discuss, in such order as seems best, each of the contentions raised by appellants.

█ Much is made in counsels' briefs of policy considerations. For example, on the one hand lies the charge that to allow compensation in such a case as this would be, in effect, to force employers and the state to finance a strike. On the other hand, it is claimed that to deny it would be to deny aid to those whom, among others, the Act was designed to protect (i.e., those who had participated in a labor dispute and lost—at least to the extent that others now had their jobs and their former employer's operations had been fully resumed). And that finally, a denial of compensation would seriously cripple their unquestioned right to strike. At the outset it should be made clear that this court is not concerned with any questions relative to the merits of the labor controversy itself. Our decision is not and cannot be determined by such factors. Instead it is determined by the choice that the elected legislative representatives of the people of this state have made for us. And whether or not the Act should compensate employees in this position is properly a choice for the legislature. As a matter of fact, the legisla-

tures of the various states are divided on this question—some choosing one course, some the other—while Michigan and California, at least, have chosen first one (each a different one) and then the other route. The function of this court, then, is simply to point out which route our legislature has chosen to travel. Though a matter of first impression in Arizona, deciding which route has been taken by a statute worded as ours is neither a new question nor is it one that requires abstruse reasoning or philosophical adventures. Our legislature has picked for its section on "disqualification" one of two usual types of wording, each of which is in wide use throughout the United States, and each, with but negligible exception, has been given a uniform interpretation. One would allow compensation in the case at bar; the other would not.

■ Specifically, appellants contend that sec. 56-1005(d) disqualifies the appellees from the benefits of the Act. That section, so far as here applicable, reads:

"Disqualification for benefits—An individual shall be disqualified for benefits:

* * * * * *

"(d) For any week with respect to which the commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute, strike or lock-out at the factory, establishment, or other premises at which he is or was last employed. * * *"

Appellants claim that read in the light of the policy of the Act to compensate only "involuntary unemployment," the phrase "stoppage of work" must refer to cessation of employee's labor and not stoppage at the place of employment, and, therefore, the fact that the hotel has resumed operations does not aid the employees in their claim for compensation.

As we have said, this disqualification clause is not peculiar to Arizona. Instead we are but one of over forty states that have copied in most respects the labor disqualification clause of the Social Security Board Draft Bill. See, Fierst and Spector, Unemployment Compensation in Labor Disputes, 49 Yale L. J. 461-491. But insofar as we have been able to find, the phrase "stoppage of work" has been interpreted by courts of last resort in only seven cases. In six of these, it has been held to mean stoppage of work of employer's establishment, not cessation of employees' labors. Lawrence Baking Co. v. Michigan U.C.C., 308 Mich. 198, 13 N.W. 2d 260, 154 A.L.R. 660; Deshler Broom Factory v. Kinney, 140 Neb. 889, 2 N.W. 2d 332; Magner v. Kinney, 141 Neb. 122, 2 N.W.2d 689, noted in U. of Chicago L. R. 75; Walgreen Co. v. Murphy, 386 Ill. 32, 53 N.E.2d 390; Saunders v. Maryland Unemployment Compensation Bd., Md., 53 A.2d 579; Carnegie-Ill. Steel Corporation v. The Review Board, etc., Ind.App., 72 N.E.2d 662. As was stated in Magner v.

Kinney, supra [141 Neb. 122, 2 N.W.2d 692]:·

"* * * In other words, the technical meaning of the term, 'stoppage of work' as used in our disqualification clause, is a substantial curtailment of work in an establishment, not the cessation of work by the claimant or claimants. The language of our unemployment compensation law quoted above (referring to a section identical with our 56-1005(b))was a substantial reenactment of the English National Insurance Act of 1911. See Statutes 1-2 Geo. V, ch. 55, sec. 87, which was amended in 1924 by section 4(1), ch. 30, Statutes 14-15, Geo. V. This language, it appears, had received a settled construction (the same as that given by the Nebraska Court) by the English authorities charged with the administration of this English act long prior to the adoption of it by ourselves." (Explanatory inserts supplied.)

See also Lesser, Labor Disputes and Unemployment Compensation, 55 Yale L.J., 167-181.

The opposite view was·taken only by the Oklahoma Court, Board of Review v. Mid-Continent Petroleum Corporation, 193 Okl. 36, 141 P.2d 69, 71, which held that "stoppage of work" as used in the act refers to the work of the employee rather that the operation of the plant. This decision not only stands alone on this point so far as we are able to determine, but was written by a divided court, unaware of the two previous decisions of courts of last resort on this matter. Magner v. Kinney, supra, Deschler Broom Factory v. Kinney, supra. Quoting from the Oklahoma case, supra:

"Counsel * * .* state that administrative officers and text-writers say that 'stoppage of work' as used in similar statutes of other states and in Great Britain means a shut-down at the factory where the workman was employed. Thus they arrive at the conclusion that unless the plant actually stops operation by reason of the labor dispute, the striker who remains out may receive compensation for unemployment. Their conclusion is not supported by the decision of any court of last resort to which our attention has been called."

Apparently, therefore, the Oklahoma Court was relying on findings of inferior tribunals and two cases not in point. These two were, first, Bodinson Mfg. Co. v. California Employment Commission, 17 Cal.2d 321, 109 P.2d 935; Id., Cal.App., 101 P.2d 165, with a statute so unlike our own that it merits no further comment here. And second, Miners in General Group v. Hix, 123 W.Va. 637, 17 S.E.2d 810, 817, which is concerned with the definition of "labor dispute", and not "stoppage of work," but which incidentally adopts a view of "stoppage of work" contrary to that of the Oklahoma Court in any case. Quoting from this West Virginia case, supra:

"* * * On the one hand, it is suggested that the operators were seeking to bring about a stoppage of work, in order to be able to dispose of surplus coal, and improve marketing conditions; * * *."

Clearly such use of the phrase shows it has reference to a shutdown of operations at the mine, and not the cessation of work of particular miners who might be replaced by others.

Finally, and most conclusive, reason and the plain wording of the statute itself denies the Oklahoma and supports the majority view that stoppage of work has reference to plant operations and not the labor of employees. Quoting from the well-reasoned memorandum opinion of the learned trial judge:

"The decisions of Michigan and Nebraska appear to this Court to be the most reasonable. The disputed section provides that the individual is disqualified for benefits when: 'The Commission finds that his * * * unemployment is due to stoppage of work which exists because of a labor dispute.' If the expression under consideration refers to the individual workman it is superfluous and serves no useful purpose in the statute. If it means what defendants contend, it would read that the workman is disqualified for benefits when 'the Commission finds that his unemployment is due to a labor dispute.' Unemployment is always due to stoppage of work by the employee. It seems the legislature must have meant to give the expression some meaning which necessitated its use. It is used four times in the same section. It speaks of 'commencement of the stoppage,' and 'members employed at the premises at which the stoppage occurs.' If it means cessation of work at the premises rather than by the individual there is necessity for the use of the term each time it is used. * * *

"This Court agrees with the following interpretation from the Supreme Court of Nebraska:

" 'Having determined that claimants' unemployment arises out of a labor dispute, the principal and disposing test of the claim for benefits is whether the unemployment is due to a 'stoppage of work' at the place of employment where last employed.

" 'The phrase as used in the disqualification clause, subsection (d), refers to the effect upon the employer's operations produced by the labor dispute or, in other words, to resulting unemployment. Subject to its exceptions, it declares disqualification of a class or group whose unemployment is the result of the curtailment or stoppage of the employer's operations. It does not refer to the cessation of work by the individual employee or employees. The disqualification is not personal, but rather for a period of time—the duration of the stoppage.' "

None of appellants' remaining citations aid in bolstering their argument. Barnes

v. Hall, 285 Ky. 160, 146 S.W.2d 929; Block Coal & Coke Co. v. United Mine Workers of America, 177 Tenn. 247, 148 S.W.2d 364, 149 S.W.2d 469; Baker v. Powhatan Mining Co., 146 Ohio St. 600, 67 N.E.2d 714; and Department of Industrial Relations v. Pesnell, 29 Ala.App. 528, 199 So. 720, are concerned with statutes wholly different from our own and which nowhere contain the phrase "stoppage of work."

Homer Laughlin China Co. v. Hix, W. Va., 37 S.E.2d 649, 651, is concerned with a question different from that posed by the case at bar but incidentally adopts a use of the phrase "stoppage of work" which, again, is opposed to appellants' contention here. In the opening paragraph of that case, the court says:

"This controversy presents the question whether the * * * claimant * * * who * * * ceased to work for his employer during and because of a strike * * * *which resulted in a stoppage of work at* the factory * * *." (Emphasis supplied.)

The same criticism may be levelled at appellants' citation of Nobes v. Michigan Unemployment Comp. Comm., 313 Mich. 472, 21 N.W.2d 820, 821, which is concerned with defining "labor dispute," admitting by their use of the phrase that "stoppage of work" has reference to factory operations. Quoting therefrom:

"On this appeal they take the position that the stoppage of work which caused their unemployment * * *."

Illustrative of the type of statutes which would deny compensation in a case such as this are the following:

"(d) During Trade Disputes. An employee shall not be eligible for benefits for any week in which his total or partial unemployment is directly due to a *labor dispute still in active progress in the establishment in* which he is or was last employed." (Emphasis supplied.) Sec. 6(d) Alabama Unemployment Compensation Law, Acts 1935, pp. 950, 958.

"An individual is not eligible for benefits for unemployment, and no such benefit shall be payable to him under any of the following conditions:

"(a) If he left his work because of a trade dispute and for the period during which he continues out of work by reason of the fact that the *trade dispute is still in active progress* in the establishment in which he was employed." (Emphasis supplied.) Calif.Laws 1939, sec. 56, p. 8.

"d. Notwithstanding the provisions of subsection (a) of this section, no individual may * * * be paid benefits for * * * any period of unemployment with respect to which * * * such individual:

"(1) lost his employment or has left his employment by reason of a labor dispute (other than a lockout) at the factory, es-

170

tablishment, or other premises at which he was employed, as long as such *labor dispute continues; * * *.*" (Emphasis supplied.) General Code of Ohio, 1345-6(d) (1).

In each of these, the disqualification is made to depend not upon the cessation of operations at the employer's establishment as is true in Arizona, but instead upon "labor dispute * * * in active progress"; "trade dispute * * * in active progress"; "labor dispute continues." There is no added requirement, such as in our statute, to the effect that the dispute must be of such an intense nature that it results in the virtual closing down of the place of business before compensation is denied to those unemployed as a result thereof.

For all the reasons outlined, then, the appellees in the case at bar are not disqualified from receiving benefits under sec. 56-1005(d) of the Arizona Act. By any reasonable interpretation of this section, and consonant with the weight of authority, the fact that they confine their claims to a period after the hotel had resumed normal operations saves them from the effects of our disqualification clause. Should a different policy be desired, the relief lies with the legislature, and not with this court.

[4, 5] In considering appellants' assignment that appellees are not "unemployed" within the meaning of our statute, and are not, therefore, entitled to benefits under the Act, we must first direct our attention to a part of the definition of "unemploy-

ment" given by the Act itself, sec. 56-1002(m):

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no wages are payable to him * * *."

Clearly these appellees have neither performed services for appellant during the period in question, nor are wages owing them therefor. On this score, at least, it can hardly be contended that appellees are still employed and therefore ineligible for benefits under the Act. And it is a firmly established rule that definitions of terms given within the framework of a statute itself control and dictate the meaning of those terms as used in the statute. Sisk v. Arizona Ice & Cold Storage Co., 60 Ariz. 496, 141 P.2d 395; Creameries of America v. Industrial Comm., 98 Utah 571, 102 P.2d 300; Gaskin v. Wayland, 61 Ariz. 291, 148 P.2d 590. However, to support their theory, appellants cite National Labor Relations Board v. Mackay Radio, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381, in an attempt to prove that strikers in the case at bar remain employees as did the strikers in the Mackay Radio case. But that case has references to the Wagner and not the Unemployment Compensation Act and the definition in the Act itself reads:

"The term 'employee' shall include * * * any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or be-

cause of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment." 29 U.S. C.A. § 151 et seq.

Therefore, the learned Justice Roberts writing for the United States Supreme Court took the only possible road, and the road we take here that of recognizing that statutory definitions control.

■ Appellants next contend that appellees do not fulfill the benefit eligibility condition as set forth in sec. 56-1004 particularly as to subsection (c) thereof, which requires that:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that: * * * (c) He * * * is *available for work*." (Emphasis supplied.)

Nothing further is done by appellants to develop this thesis, but as no claim is made that appellees failed to fulfill all the statutory requirements other than those here discussed, what appellants must mean is that shortly after the hotel was struck, and before the strikers had been replaced, their jobs were open to them (on the hotel's terms, of course) and the fact that they refused showed them to be not "available for work". This argument not only falls by its own weight, but would render utterly senseless sec. 56-1005(d), which purports to show under what conditions a striker will and will not be eligible for compensation, and sec. 56-1005(c) (1) which, among other things, specifically exempts applicants from having to accept positions "vacant due directly to a strike, lock-out or other labor dispute." The most that can be said for the only case cited by appellants to prove their point, Haynes v. Unemployment Compensation Comm., 353 Mo. 540, 183 S.W.2d 77, is that the facts and law therein discussed have no possible relation to the case at bar. The Haynes case concerns itself with whether a woman who quits her job as a cutter in a shoe factory at her doctor's instruction (not as the result of any labor dispute) is or is not "available for work" when she will agree to return only if made a saleslady.

■ Finally appellants rely in great part upon the portions of sec. 56-1001 emphasized below to support their contention that it was never the purpose of the Act to compensate men who lost their jobs because they went on strike—that such unemployment was not "involuntary unemployment" within contemplation of this law:

*"Short title and declaration of state public policy.* * * * As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. *Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature* to prevent its spread and to lighten its burden which now so often

falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of economic life * * *. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this estate require *the enactment of this measure,* under the police powers of the state, *for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."* (Emphasis supplied.)

This policy section of the Act would be controlling if we were called upon to interpret an operative portion of the statute that was ambiguous or of doubtful meaning or application for the reason that under such circumstances that construction is favored which conforms to, and operates to carry out, the spirit of the statute. In other words if the Act can be given a construction which is consistent with its declared purpose, it will be so construed. Bank of Lowell v. Cox, 35 Ariz. 403, 279 P. 257. But here, as we have pointed out, the operative portions of the Act which we are called upon to apply are not ambiguous, having been given a meaning settled by the weight of authority and common sense, hence the "effect of words of clear import may not be overridden by the spirit of the statute". 50 Am.Jur., Statutes, sec. 301. This rule is stated in 59 C.J., Statutes, sec. 602, in these words: "But the policy of the law is not controlling and can be considered only where the statute is ambiguous." Turning to the reported cases, in State v. Superior Court, 92 Wash. 16, 159 P. 92, 96, we find this terse statement:

"Both in England and in this country it was at one time a common practice to prefix to each law a preface or preamble stating the motives and inducement to the making of it; but it is not an essential part of the statute, and is now generally omitted. It is not only not essential and generally omitted, but it is without force in a legislative sense, being but a guide to the intentions of the framer. As such guide it is often of importance. In this sense it is said to be a key to open the understanding of a statute. The preamble is properly referred to when doubts or ambiguities arise upon the words of the enacting part. *It can never enlarge. It is no part of the law.* Sedgwick, Constr.Stat. & Const.Law, pp. 42, 43; 1 Story, Constitution, Book 3, c. 6; Edwards v. Pope, 3 Scam., Ill., 465; Bouvier's Law Dictionary. * * *" (Emphasis supplied.)

Confronted with a similar problem the Supreme Court of New Mexico in the case of Continental Oil Co. v. City of Santa Fe, 25 N.M. 94, 177 P. 742, 744, 3 A.L.R. 398, said:

"* * * a preamble is a prefatory statement or explanation or a finding of facts by the power making it, purporting to

state the purpose, reason, or occasion for making the law to which it is prefixed.

"It is utilized as an aid to the interpretation of the act to which it is prefixed, for the purpose of clarifying, or to assist in clarifying, ambiguities. Its office is to expound powers conferred, not substantially to create them. 2 Lewis-Sutherland Stat. Const. (2d Ed.) § 341 * * *."

 However, even if we gave to the declaration of policy the status and dignity contended for by appellants it would avail them nothing for the reason that if the general wording of the introductory policy section of the statute heretofore quoted is inconsistent with sec. 56-1005(d), quoted supra, which is specifically concerned with disqualification due to labor disputes, the latter must control for " * * * where a statute expresses first a general intent, and afterwards and inconsistent particular intent, the latter will be taken as an exception from the former and both will stand." 1 Lewis' Sutherland on Statutory Construction, 2d Ed., par. 268; Rodgers v. United States, 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816.

It is interesting to note two cases decided by courts of last resort within the past five months and not cited in counsels' briefs: Carnegie-Illinois Steel Corporation v. Review Board, etc., supra, decided on May 2, 1947, by the Appellate Court of Indiana sitting in Banc; and Saunders v. Maryland Unemployment Compensation Bd., supra, decided June 11, 1947, by the Maryland Court of Appeals. Both are extremely well reasoned opinions. Both deal with problems related to ours and the construction of unemployment compensation statutes such as ours containing the phrase "stoppage of work." The Indiana case develops particularly the history and effect of the two general types of disqualification sections contained in various unemployment acts, and the Maryland case gives careful attention to the effect of the policy portion of the statute upon this disqualification clause. Both opinions follow in every respect the settled weight of authority upon all of these questions, taking the only route left open by the statutes with which they dealt, and a route we must adopt here.

After having considered each of the points raised by appellants, we have reached the conclusion that the trial court did not err in entering the judgment that it did. Basically the decision turns upon the disqualification to receive benefits which, under the present form of our statute, is not imposed on a striking employee except during the period that a stoppage of work results at the establishment from the labor dispute. While it is in nowise controlling upon us, we observe from the record that a similar conclusion was reached by the Director of the Readjustment Allowance Service of the Veterans Administration, who, in considering claims growing out of this same strike, passed upon the identical question here presented

when he granted the claims of some fourteen servicemen (who are among the appellees in this case) for Readjustment Allowances.

Judgment affirmed.

·STANFORD, C. J., and LA PRADE, J., concur.