THE LENOX REALTY COMPANY *vs.* WILLIAM H. HACKETT, TAX COMMISSIONER.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued October 7th—decided November 6th, 1936.

*Henry J. Marks,* for the plaintiff.

*Richard F. Corkey,* Assistant Attorney General, with whom, on the brief, were *Edward J. Daly,* Attorney General, and *Charles J. McLaughlin,* Deputy Attorney General, for the defendant.

HINMAN, J.   The General Assembly at its 1935 session passed an act, General Statutes, Cum. Sup., Chapter 66b, "The Corporation Business Tax Act," which provided (§ 421c) that "each company subject to the provisions of this chapter," except certain specified corporations of which the plaintiff is not one, "shall pay for the privilege of carrying on or doing business within this state, the larger of (A) a tax, provided for in § 418c, of two per cent on its net income as therein defined and (B) "a tax of one mill per dollar on the amount derived (a) by adding (1) the par value of all interest-bearing indebtedness of such company outstanding at the end of the income year, exclusive of any such indebtedness evidenced by securities owned by, or held in trust for, such company, (2) the issued and outstanding capital stock, the surplus and the undivided profits at the end of the income year and (3) all reserves, or any part thereof, which can be reasonably expected to accrue to the stockholders or owners of equitable shares in the assets of such company at the end of the income year, (b) by subtracting

from the sum so calculated (1) the amount of any deficit carried on the balance sheet and (2) the amount of any holdings of stock of private corporations shown on the balance sheet and (c) by allocating the remainder so derived between this and other states under the provisions of section 422c."

The plaintiff is a Connecticut corporation liable for the payment of a tax in accordance with the provisions of that act. The tax return filed by it for the fiscal year ending September 30th, 1935, disclosed a loss during that year, so that it had no net income, hence was taxable under (B) of § 421c above quoted. The return disclosed that in addition to unquestioned interest-bearing indebtedness of the plaintiff, secured by mortgages, which it included in the computation of its tax, there were mortgages on other properties owned by the plaintiff, which it had acquired by foreclosure of junior mortgages or by quitclaim deed in lieu of foreclosure and on which it had previously held junior mortgages. The outstanding indebtedness, amounting to $1,065,930, secured by these mortgages was not contracted by the plaintiff or assumed by it and it was not and is not personally liable therefor. These mortgages were not included in the plaintiff's computation of its tax, but the tax commissioner ruled that the par value thereof should be included, and assessed an additional tax of one mill per dollar thereon, which the plaintiff paid under protest, and brought this appeal, pursuant to § 435c, which provides that any taxpayer aggrieved because of any tax laid under the provisions of the chapter may appeal therefrom to the Superior Court for Hartford County, which may grant such relief as may be equitable and, if the tax shall have been paid, order the treasurer to repay the amount of such relief, with interest. The stipulation for the purposes of this reservation includes the material facts

above stated, also that the mortgages in question bear interest, and that the plaintiff exercised control and dominion over the real estate, collected certain rents yielded thereby, and paid all the expenses for repair and maintenance, and the taxes on some of the parcels, taxes on the others remaining unpaid.

The questions reserved are: (A) Whether or not the tax commissioner erred in including the par value of the indebtedness secured by these mortgages in his computation of the tax, and (B) whether or not the plaintiff is entitled to a refund of that portion of the tax ($1065.93) representing the assessment on that indebtedness, with interest from the date of payment? The primary inquiry presented concerns the scope of the expression "indebtedness of such company" as employed in the act—specifically, whether it is broad enough to include the mortgages here involved.

A standard definition of "indebtedness" is "The sum owed; debts, collectively." "Debt," in the present connotation, is defined as "That which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; an obligation or liability." Webster's New International Dictionary (2d Ed.). We have, on occasion, adopted this definition with the addition: " 'that of which payment is liable to be exacted.' " *Guilford-Chester Water Co.* v. *Guilford,* 107 Conn. 519, 529, 141 Atl. 880; *Cook* v. *Bartholomew,* 60 Conn. 24, 26, 22 Atl. 444. Debt "contemplates not only an obligation upon the debtor to pay, but a reciprocal right on the part of the creditor to enforce payment by appropriate proceedings." *Guilford-Chester Water Co.* v. *Guilford,* supra, p. 529; 1 Jones, Mortgages (8th Ed.) p. 390. "Indebtedness is a state of being in debt and a debt is defined to be

'that which one person is bound to pay to another'; or an 'obligation.' " *Levy* v. *McClellan*, 196 N. Y. 178, 200, 89 N. E. 569. See also Words & Phrases, Vol. 4 (1st Series) p. 3528; Vol. 2 (2d Series) p. 1025; Vol. 4 (3d Series) p. 208; Vol. 2 (4th Series) p. 322. Indebtedness, in its strict legal significance, applies only to an obligation arising from contract, express or implied, but in its broader sense " 'it may include every obligation by which one person is bound to pay money, goods, or services to another, . . . however contracted.' " *City of Perry* v. *Johnson*, 106 Okl. 32, 34, 233 Pac. 679, 680. This broader significance is, however, subject to the inherent limitation that the indebtedness created or constituted by a debt is, necessarily, that only of the party from whom the debt is owing, who is under an obligation to the creditor to pay, and against whom the latter has a right to receive and enforce payment. *Trask* v. *Livingston County*, 210 Mo. 582, 598, 109 S. W. 656, 37 L. R. A. (N. S.) 1045, 1049, 1050.

The statute now under consideration expressly limits the indebtedness specified to that of the corporation whose tax is being computed. The taking of title to property subject to a mortgage thereon, without assumption of the debt secured thereby, creates no personal liability on the part of the grantee to pay the mortgage debt; it remains that of the original mortgagor alone. *Valente* v. *Costantino*, 116 Conn. 386, 388, 165 Atl. 210; *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185, 197, 90 Atl. 369. Also, in the instant case it is expressly stipulated as a fact that the indebtedness secured by the mortgages here in question "was not contracted by" the plaintiff, "or assumed by it, and it was not and is not personally liable" therefor. In this situation we discover no tenable ground upon which that indebtedness can be regarded or held to be

"indebtedness of [the] company" which is the present plaintiff. While it may be that "the definitive or lexicological significance" of the expression "indebtedness of such company" might not be conclusive of the legislative intent if there were, in this or other statutes, indications significant of a broader meaning (*New Britain* v. *Kilbourne,* 109 Conn. 422, 427, 147 Atl. 124) we have not been directed to or found any such justification. Even though, if any of the mortgagees requires payment of the indebtedness secured by his mortgage, it might be necessary for the plaintiff, if it desires to continue its ownership and benefit of the mortgaged property, to discharge it by paying the amount secured, that is patently insufficient to constitute an "indebtedness of [the] company" consonant with any recognized definition or conception of the term.

It is apparent that Chapter 66b and especially § 418c was adopted in response to suggestions and recommendations contained in the report (1934) of the temporary commission to study the tax laws of the State, raised by Special Act in 1933. 21 Special Laws, p. 1143. The commission pointed out in its report (p. 445) that although "government . . . maintains an environment which is indispensable to the conduct of business," yet under net income taxes, such as that imposed by the State on miscellaneous corporations under Chapter 74, General Statutes, 1930, "the claims of government are given a standing secondary to all other expenses of business; government is made only a residual sharer of the earnings of business enterprises, and its revenues from this source are subject to the violent changes caused by business fluctuations. Government extends to all concerns on the same terms the privilege of exploiting the market. Unprofitable and profitable concerns derive similar benefits and inflict

similar costs. Whether business activities result in a profit or a loss is not a responsibility of government but of the managers of the business. Such considerations point to the use of some measure of the volume of business done as a proper base of a business tax." The report then discusses gross sales and gross earnings as bases of business taxes formulated on that theory, but points out difficulties in the way of their practical operation and suggests (p. 446) that "these difficulties may be obviated by adopting for miscellaneous corporations a more homogeneous tax base. . . . Gross assets located in the state constitute a base of this sort. Many states . . . have developed business taxes based on capital or assets. . . . They require some contribution from unprofitable as well as from profitable concerns for the market privileges which they enjoy. . . . The net income tax throws the balance to the side of business to the disadvantage of governmental finance. Gross assets and [gross] earnings taxes throw the balance to the side of government at the expense of business." The commission suggests (p. 446) that one method of compromising the conflicting claims as between tax bases "would be to impose two or more taxes on the same business concern concurrently and require the larger of the taxes to be paid," and, further (p. 471), that "in addition to a broader net income tax base . . . a new and considerably higher minimum tax be established. A tax upon capital invested in the state, as measured by the sum of the book value of all interest-bearing indebtedness, all outstanding capital stock, surplus, and undivided profits, and all reserves which can reasonably be expected to accrue to the stockholders appears to provide the most equitable base for such a tax. Upon this base, properly allocated between this and other states, we recommend that a tax rate of one mill

be imposed." The specific recommendation of the commission, so far as germane to the present inquiry, was (p. 459) that the state taxes on miscellaneous corporations consist of "(1) a tax of two per cent measured by net income, (2) a tax of one mill on invested capital, and (3) a minimum tax of $10, and that each taxpayer be required to pay the largest of the three: . . . That invested capital be defined as the book value at the end of the taxpayer's fiscal year of the sum of all interest-bearing indebtedness, all outstanding capital stock, surplus, undivided profits, and reserves which can reasonably be expected to accrue to the stockholders."

The statute does not expressly denominate the tax as "on invested capital," as did the recommendation of the commission, but if it be so regarded the act definitely specifies the constituents of such capital for the purposes of the tax, and even if the mortgages here involved could be considered, practically or theoretically, as a part of the capital of the plaintiff corporation, as the tax commissioner contends, they are not within the scope of any of the elements specified by the statute, and if it might be assumed that the General Assembly would have so enlarged the definition as to include them had it contemplated such a situation as is here presented, it is not our province or privilege to supply the omission by inference or judicial construction. "Arguments and considerations addressed to . . . matters of legal interpretation and construction, are the only ones to which we can listen." *Connelly* v. *Bridgeport,* 104 Conn. 238, 249, 132 Atl. 690. "We must construe the act as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions." *Murphy* v. *Way,* 107 Conn. 633, 639, 141 Atl. 858; *Grace*

*Hospital Society* v. *New Haven,* 119 Conn. 146, 154, 174 Atl. 411.

The answer to each reserved question is "Yes."

No costs will be taxed in this court.

In this opinion the other judges concurred.