MICHAEL C. BECKANSTIN *v.* LIQUOR CONTROL COMMISSION

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued June 10—decided July 21, 1953

*Edward Seltzer,* with whom, on the brief, were *Julius B. Schatz* and *Arthur D. Weinstein,* for the appellant (plaintiff).

*William L. Beers,* deputy attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the appellee (defendant).

INGLIS, J.   The liquor control commission suspended for forty-five days the wholesaler's liquor permit on which the plaintiff was the permittee and the Eastern Liquor Company, Inc., was the backer. The suspension was based upon three violations of § 4306 of the General Statutes[1] and three violations of § 151-19 of the regulations promulgated by the

---

[1] Section 4306, insofar as it is pertinent to the case, reads: "No manufacturer, wholesaler or out-of-state shipper permittee shall discriminate in any manner in price discounts between one permittee and another on sales or purchases of alcoholic liquors bearing the same brand or trade name and of like age and quality, nor shall he allow in any form any discount, rebate, free goods, allowance or other inducement for the purpose of making sales or purchases. Each manufacturer, wholesaler and out-of-state shipper permittee shall post with the liquor control commission the price of any brand of goods offered for sale in Connecticut, which price when so posted shall be the controlling price for the month following such posting. Notice of all manufacturer, wholesaler and out-of-state shipper permittee prices

commission.[1] Upon appeal the Court of Common Pleas rendered judgment sustaining the commission and from that judgment this appeal has been taken.

From the evidence before it, the commission might reasonably have found the following facts: In the summer and fall of 1949 Edward C. Beik was employed as a salesman by the Eastern Liquor Company. In August of that year he sold, on behalf of the company, five cases of Guckenheimer whiskey to Manuel Caloyianis, a package store permittee in Greenwich, and agreed in connection with the sale to give Caloyianis two bottles of the same brand of whiskey free. The five cases were delivered with an invoice which made no mention of the two extra bottles. The two bottles, unaccompanied by any invoice, were given to Caloyianis by Beik about a week later. In September Beik by a similar deal for the company sold to Caloyianis five cases of A.D.C. whiskey with a bonus of two bottles. The invoice was for the five cases, and the extra two bottles, although delivered by Beik, were never invoiced. On another occasion in the fall of the same year, Beik, acting for the Eastern Liquor Company, sold to another package store permittee, Daniel Levkoff, of Rowayton,

shall be given to permittee purchasers either by direct mail or advertising in a trade publication having circulation among the retail permittees."

[1] Section 151-19 of the 1948 revision of the regulations (1952 Rev., § 204-19) reads in part: "Every holder of [a] manufacturer or wholesaler permit shall maintain a complete record of each sale of alcoholic liquors made by him, which shall include the number of cases or fractions thereof, the size of the containers of each brand, the price thereof, the name of the purchaser, a true and accurate statement of the terms and conditions on which such sale is made, and in addition thereto, shall simultaneously furnish to the purchaser, with each shipment for delivery, an invoice setting forth in detail the information set forth above. Any terms and conditions of the sale not stated on said invoice shall constitute a violation."

a case of Guckenheimer whiskey and gave him a rebate of $1. The rebate did not appear on the invoice. Beik procured the four bonus bottles delivered to to Caloyianis from the secretary and office manager of the company, ostensibly as samples. There was no direct evidence that Beik was specifically authorized by the company to give the bonus bottles or pay the rebate or that either the plaintiff or any officer of the company had knowledge that the bonus had been given or the rebate paid.

The commission concluded that each of the three transactions constituted a violation by the plaintiff of § 4306 and also a violation of the regulation requiring accurate invoices. It further concluded that the violations rendered the permittee an unsuitable person and therefore warranted the suspension of the permit. The question before us is whether the trial court erred in deciding that the liquor control commission did not act illegally in coming to these conclusions. The claim of the plaintiff is that the action of the commission was illegal, first, because, he says, there had been no violation of the statute by him or his backer and, second, because the statute is unconstitutional.

The gist of the plaintiff's argument in support of his contention that neither he nor his company violated the statute is that, inasmuch as they did not authorize and did not have knowledge of the transactions entered into by Beik, it cannot be said that they allowed any discount, rebate, free goods or other inducement for the purpose of making sales. The word "allow" in the statute is the crucial word. The plaintiff claims that it means "permit" and that therefore the statute is not violated unless the permittee permits one of his employees to give a discount, rebate or other con-

cession to a customer. He contends that no one can permit the doing of an act without at least having knowledge that it is being done.

The verb "allow" has many different meanings. See Webster's New International Dictionary (2d Ed.); 3 Words & Phrases (Perm. Ed.) 236. When followed by words descriptive of an act, it may well mean "permit." Where, however, it is followed by a series of nouns which do not connote action, it means to grant, to give, to accord or to let one have. Clearly, this is the sense in which it is used in § 4306. The statute says nothing at all about the permittee not permitting his employees to make an allowance. It is the making of the allowance itself which is prohibited. If an employee of a permittee or a backer makes an allowance of a discount or a rebate or of free goods or other inducement to a customer, that allowance comes within the prohibition of the statute. It is not essential that the permittee or backer himself have actual knowledge that the allowance is to be made. The only question is whether the permittee is responsible for the act of his or his backer's agent in making the allowance.

Section 4228 of the General Statutes grants to the liquor control commission the power to "make all necessary rules and regulations . . . for carrying out, enforcing and preventing violation of [the Liquor Control Act]," and § 4229 gives to such regulations the force of law. In effect at the time Beik made the sales upon which the commission predicated its order was § 151-6 of the 1948 revision of the regulations (1952 Rev., § 204-6). This section read: "In disciplinary proceedings, it shall be no defense that an employee or agent of the permittee acted contrary to order or that a permittee did not participate in the violating action or actions."

In so far as this regulation is in aid of § 4306, there can be no doubt of its validity. It is not a regulation designed to be resorted to in aid of any criminal prosecution. It applies only in disciplinary proceedings. It therefore does not run contrary to the rule that ordinarily a principal is not criminally liable for acts of his agent in which he has not participated and of which he has no knowledge. See *State* v. *Maurisky,* 102 Conn. 634, 638, 129 A. 714; *State* v. *Curtiss,* 69 Conn. 86, 89, 36 A. 1014; *Barnes* v. *State,* 19 Conn. 398, 407. Usually a wholesaler permittee and his backer constitute a large organization necessarily acting, so far as the sale of liquor is concerned, by agents who are not principal officers. In most instances it would be impossible to prove that any specific violation of § 4306 was committed with the actual knowledge of the permittee or the executive officers of the backer, even though that were the fact. It follows that a regulation making the permittee responsible for the acts of his agents in allowing rebates or free goods is, in the words of § 4228, "necessary . . . for carrying out, enforcing and preventing violation" of § 4306 and is in harmony with that statute.

Pursuant to the regulation, the permittee in the present case was responsible for Beik's conduct in making the sales to Caloyianis and Levkoff. The commission was therefore warranted in concluding that the permittee had violated § 4306 and also its regulation requiring accurate invoices, which, incidentally, is also a regulation reasonably necessary for the enforcement of the statute.

The plaintiff's second main claim is that § 4306 is unconstitutional both because it violates the due process provision of § 1 of the fourteenth amendment to the federal constitution and also because, in so far

as it affects interstate commerce, it contravenes the commerce clause of the federal constitution (Art. I § 8). This contention is without real merit. Because of the danger to public health and welfare inherent in the liquor traffic, there is, under the police power, more latitude in the regulation of it than there is in the control of ordinary businesses. *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674, 88 A.2d 388. The obvious purpose of the provisions of the statute quoted above and of the regulations designed to enforce them is to prevent the evil of the tied house which was rampant in preprohibition days. The prevention of that evil is for the public welfare. The method of accomplishing this purpose adopted by the legislature, i.e., the prohibition of the granting to a retailer by a wholesaler of any reduction of the established price of a given brand of liquor, bears a reasonable and substantial relation to the purpose. The enactment is, therefore, well within the police power and in accord with due process. *Schwartz* v. *Kelly,* decided this day; *Francis* v. *Fitzpatrick,* 129 Conn. 619, 621, 30 A.2d 552; *State* v. *Zazzaro,* 128 Conn. 160, 166, 20 A.2d 737; *Carroll* v. *Schwartz,* 127 Conn. 126, 129, 14 A.2d 754; *Crowley* v. *Christensen,* 137 U.S. 86, 90, 11 S.Ct. 13, 34 L.Ed. 620. Moreover, in the present case, we are concerned only with the suspension of a permit. Such a permit is merely a personal privilege and does not constitute property. General Statutes § 4236. The plaintiff has not been deprived of any property right.

The contention of the plaintiff based upon the commerce clause is, in substance, that a state statute such as § 4306, which directs wholesalers to fix and maintain prices at which they will sell to retailers alcoholic liquor which has been transported in interstate commerce, is violative of the Sherman Antitrust Act

(26 Stat. 209, as amended, 15 U.S.C. § 1) and therefore impinges upon the power to regulate commerce which is exclusively in the Congress. 'Exactly this same contention was made in *Schwartz* v. *Kelly,* supra, with reference to § 904b of the Cumulative Supplement of 1951, which compels permittees for the sale of liquor not to be consumed on the premises to charge the price established for branded liquor by the wholesaler. In that case, we held that the twenty-first amendment to the United States constitution accorded to the states the power to enact such legislation unrestricted by the commerce clause. That case is conclusive of the contention made by the plaintiff in the present case.

We therefore conclude that § 4306 is constitutional and the regulation of the liquor control commission requiring accurate invoices is valid, that the commission was warranted in concluding that Beik had committed violations thereof for which the plaintiff was responsible, and that, consequently, the commission did not act arbitrarily or illegally in suspending the plaintiff's permit.

There is no error.

In this opinion the other judges concurred.