STATE OF CONNECTICUT *v.* FRANK LAMPERELLI

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued June 4—decided July 7, 1954

*Richard F. Corkey,* with whom, on the brief, was *James E. Corkey,* for the appellant (defendant).

*Edward C. Hamill,* prosecuting attorney, for the appellee (state).

O'SULLIVAN, J. The information in this case charged that on November 14, 1952, at New London, the defendant, by himself, his servant or agent, sold or delivered alcoholic liquor to a minor, in violation of General Statutes, § 4293. The defendant elected trial to the court, which found him guilty as charged. He has appealed to this court from the judgment imposing sentence upon him.

The following facts are not in dispute: On November 14, 1952, the defendant was the permittee under a liquor permit for the premises known as Lamperelli's "Seven Brothers" Restaurant, in New London. His backer was a corporation, of which the defendant and his six brothers were the sole stockholders. The corporation occupied an entire building which it had recently erected for its own use. The interior of the building consisted mainly of a large dining room and dance floor, a restaurant and soda fountain, and a cocktail lounge equipped with a horseshoe-

shaped bar. The partitions between the three rooms were of wood for about four feet above the floor, and from there on up were of glass. The purpose of this feature of the construction and layout of the building was to afford an almost complete view of all parts of the rooms from a bandstand at one end of the dining room. However, from that vantage point, the occupants of certain booths in the lounge could not be seen.

In addition to the defendant and his six brothers, sixteen other persons were employed on the premises on the night of November 14. These included waiters, waitresses, cooks, bartenders and a hostess. Also in attendance were three policemen from the New London force who had been assigned to duty in the establishment at the request and expense of the corporation. One of the officers was posted at the entrance to the dining room and dance floor; another moved about in that area; and the third circulated through the restaurant and lounge. Because some of the patrons were naval personnel, members of a United States navy shore patrol were also present. Music by a band composed of the defendant and his brothers was a nightly feature. On the evening in question, they played in the dining room between 8:45 p.m. and 12:45 a.m. The number of patrons ranged from about 275 early in the evening to 400 later on.

Shortly after 6:30 p.m., George Grangel, a minor of 18 years, and an adult companion, David Zack, entered the building and went to the cocktail lounge, where they seated themselves on adjoining stools at the bar, and ordered. Each consumed four glasses of beer. After an hour they left but returned later in the evening. They again went to the lounge, where they occupied one of the booths. Each con-

sumed more beer on this occasion, some of which was ordered by Zack and some by Grangel. On their first visit, Zack and Grangel were served by a waiter named Byington. He did not try to find out how old Grangel was. During their second visit, Zack and Grangel were served beer by two waitresses, who likewise made no inquiry as to Grangel's age. Byington and the waitresses thought that he was over twenty-one.

Those waiting on Zack and Grangel were employed by the corporation in the capacities of waiter and waitresses, and they served other patrons on that night and accounted to their employer for the moneys received from the sales to Zack and Grangel. The defendant had been at the establishment tending bar in the lounge from 9 o'clock on the morning of November 14 until 6:30 in the evening, when he went home. He returned about 8 o'clock, attended to certain financial matters in an office room, and then made preparations to go to the bandstand at 8:45 p.m. During the time just mentioned he did not enter the lounge, although later he went through it to observe conditions during the musical intermission. He was totally unaware of Grangel's presence and did not learn of it until he was advised of a criminal charge against himself on the evening of November 16. One of the defendant's brothers, Maurice, was in active charge of the personnel. In accordance with customary routine and under the defendant's supervision as permittee, Maurice walked through the lounge during the evening on more than seven occasions to check upon the employees' performance of their duties and the possible presence of minors or troublemakers.

Before the opening of the present establishment, the defendant was the permittee in one which had

been operated by him and his brothers since February, 1947. The defendant has been a resident of Connecticut from infancy and was an honorably discharged veteran of World War II. He had never been arrested for any violation of law prior to the charge directed against him in the case at bar, nor had he ever been summoned before the liquor control commission to answer in any investigation or inquiry concerning his conduct as a permittee.

The defendant has pursued many assignments of error but, speaking broadly, they all point to a single question which is decisive of his appeal. That question is whether the court was correct in excluding, as immaterial, evidence offered by the defendant to prove that the sale of intoxicating liquor to Grangel was not only without his consent but was, in fact, contrary to his express orders. The purpose of the offer was not to lay the basis for a claim that the defendant was innocent of the charge because neither he nor an agent or servant of his had any guilty intent in making the sales. See *State* v. *Katz,* 122 Conn. 439, 441, 189 A. 606. It was, rather, to establish that those who sold to the minor were not, at the time, acting as his servants or agents.

The pertinent part of the statute under which the defendant was charged provides that "[a]ny permittee who, by himself, his servant or agent, shall sell or deliver alcoholic liquor to any minor . . . shall be" subjected to certain penalties. General Statutes § 4293. The court's determination of guilt was predicated upon the conclusion that the sale to the minor was made by those who were the servants or agents of the defendant and who were, at the time, acting within the scope of their employment. Although conceding that under § 4265(6) of the Liquor Control Act, he, as a licensed permittee, was to be re-

garded as the employer of Byington and the wait-resses, even though they were actually in the employ of the corporation, the defendant claimed at trial that those employees were not acting within the scope of their employment when they served beer to Grangel. To prove that this was so, the defendant offered evidence that their acts (1) were performed without either his express or implied consent, (2) were contrary to bona fide instructions issued to the help by him, and (3) were a deviation from a prescribed course of conduct. The court excluded such proof and ruled that upon the mere showing that Byington and the waitresses "were employed by the [defendant] as such to wait upon patrons of his establishment, they were acting within the scope of their employment in illegally and unlawfully selling to a minor." In taking this position the court erred.

A problem comparable to that which the proposed offer presented to the court in the case at bar arose in *Barnes* v. *State,* 19 Conn. 398. The information in that case charged that "Alphonso Barnes, on the 15th of January, 1849, at Bristol, did sell, and offer to sell, by himself and an agent, wines, spiritous liquor and other intoxicating beverage, to one Boylston Whitney . . . a common drunkard." Barnes offered evidence that he had given his employees specific directions not to sell liquor to such persons. The offer was made as conducing to prove that the employee, in making the sale to Whitney during Barnes's absence, did not act as Barnes's servant. In overruling the trial court, we held (p. 406) that the evidence was admissible, quoting with approval from *Commonwealth* v. *Nichols,* 10 Metc. (51 Mass.) 259, 262, which reads as follows: "We think that a sale by the servant, in the shop of the master,

is only *prima facie* evidence of such sale by the master as would subject him to the penalty for violating the statute forbidding the sale of spiritous liquors without license; that the relation of these parties, the fact that the defendant was in possession of the shop and was the owner of the liquor, and that the sale was made by his servant, furnish strong evidence to authorize and require the jury to find the defendant guilty. But we cannot say that no possible case can arise in which the inference from all these facts may not be rebutted by other proof. Unexplained, they would be sufficient to convict the party. So too it should be understood that merely colorable dissent, or a prohibition not to sell, however publicly or frequently repeated, if not made *bona fide,* will not avail. But if a sale of liquor is made by the servant without the knowledge of the master, and really in opposition to his will, and in no way participated in, approved or countenanced by him, and this is clearly shown by the master, he ought to be acquitted." This is but another way of saying that ordinarily a principal is not criminally liable for the acts of his agent in which he did not participate and of which he had no knowledge. *Beckanstin* v. *Liquor Control Commission,* 140 Conn. 185, 191, 99 A.2d 119. The same rule holds as between master and servant. Note, 43 L.R.A. (N.S.) 2. The words "servant or agent" in a criminal statute do not have the breadth of meaning they possess in a civil action. They do not mean that a person is another's servant or agent in every transaction merely because he sustains toward the other that general relationship. *Barnes* v. *State,* supra, 405. Nor do they mean "every one who sells liquor on his employer's premises, without, and contrary to, his instructions." Ibid.

We recognize that, in similar types of cases, courts of other jurisdictions are not in accord with our law. We have, however, consistently followed the principles enunciated in the *Barnes* case. *State* v. *Curtiss,* 69 Conn. 86, 89, 36 A. 1014; *State* v. *Maurisky,* 102 Conn. 634, 638, 129 A. 714; *State* v. *Lougiotis,* 130 Conn. 372, 376, 34 A.2d 777. The master is criminally liable for a sale by his employee to a minor only when the employee acts within the scope of his employment. The defendant was entitled to present the evidence which he sought to have the court hear and consider.

It has been suggested that this will lead to a nullification of the statute by permitting an owner of a liquor establishment to inform his employees not to sell to minors and, in this manner, to escape the penalty of the law. This, however, is not necessarily true, as has been pointed out in the past. The court may believe that the owner did not give any instructions to his servants or that, if he did, it was done with tongue in cheek. If, on the other hand, his directions were bona fide and were intended to lay out a course of conduct to be followed strictly by the employees, he ought not to be held subject to the high penalties provided by the statute when, in fact, those employees acted beyond the scope of their employment.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.