GRACE E. PIERCE ET AL. *v.* PASQUALE ALBANESE

INGLIS, C. J., BALDWIN, O'SULLIVAN, DALY and SHAPIRO, Js.

Argued December 5, 1956—decided February 13, 1957

*J. Warren Upson,* with whom were *John H. Cassidy, Jr.,* and, on the brief, *John M. Brannelly,* for the appellant (defendant).

*C. Harold Schwartz,* with whom were *Arnold J. Bai* and, on the brief, *David Goldstein,* for the appellees (plaintiffs).

BALDWIN, J. This is an action brought under § 4307 of the General Statutes, popularly called the Dram Shop Act. The plaintiff Gordon D. Pierce owned and was a passenger in an Oldsmobile operated by the plaintiff Grace E. Pierce, his wife, when it was involved in a collision with a Chevrolet owned and operated by Floyd F. Gilleo on route 25 in Newtown on the night of September 28, 1952. The defendant is Pasquale Albanese, who owned and conducted on

route 25 in Newtown a place of business, known as Pat's Log Cabin, where alcoholic beverages were sold to be consumed on the premises. The plaintiffs also brought suit against Floyd F. Gilleo, claiming damages for the alleged negligent operation of his Chevrolet. Floyd F. Gilleo filed a counterclaim seeking damages from the Pierces. Floyd H. Gilleo, a passenger in the Gilleo Chevrolet, also sued the Pierces for their alleged negligence. The cases were tried together to a court with a jury. Verdicts were returned in favor of the Pierces in the present action against Albanese. The other actions resulted in verdicts in favor of Floyd F. Gilleo on the complaint of the Pierces and in favor of the Pierces on Floyd F. Gilleo's counterclaim and in the action brought by Floyd H. Gilleo against them. We are directly concerned here only with the action brought by the Pierces against Albanese, in which he has appealed, alleging errors in the court's charge, in the denial of his motions to set aside the verdict and for judgment notwithstanding the verdict, in the refusal to submit an interrogatory to the jury, and in the finding. The errors alleged in the charge and in the ruling on the motions raise, among other questions, the defendant's claim that § 4307 (as amended, Cum. Sup. 1955, § 2172d) is unconstitutional. If that is so, a consideration of all the other issues becomes unnecessary to a decision of the case, and therefore we shall resolve that issue first.

The facts claimed to have been proved by the parties are not subject to any correction which will aid the defendant. They can be stated as follows: Route 25 in Newtown is a public highway running north and south. Route 6 joins it from the east at substantially right angles. The Pierces were visiting at the home of Dr. Clifford Johnson on the easterly

side of route 25 about 500 yards south of its junction with route 6. Just north of the Johnson residence, a driveway extends easterly at right angles with the outer edge of the shoulder of route 25. The Pierces had parked their Oldsmobile in this driveway, off the traveled portion of route 25, while they were visiting in the Johnson home. The Gilleos had left Bridgeport about 11 p.m., intending to go fishing in Lake Zoar. Their course was north on route 25 and east on route 6. Twenty to twenty-five minutes after leaving Bridgeport, they stopped at Pat's Log Cabin, owned by the defendant and located on route 25 something more than a mile south of its junction with route 6. It was the Gilleos' custom when going fishing to stop for a drink of alcoholic beverage on the way to and from the lake. The defendant was at the Log Cabin when they came in. The Gilleos had something alcoholic to drink and left about midnight, proceeding north on route 25. While at the Log Cabin, Floyd F. Gilleo, the driver of the car, consumed alcoholic beverage which was sold to him while he was in an intoxicated condition. The Pierces left the Johnson house about midnight. Mrs. Pierce got into the driver's seat of their car, and her husband got in beside her. Before Mrs. Pierce could put the car in motion, it was struck by the Gilleo car and both of the Pierces were thrown from their automobile. The Gilleo car proceeded northerly for 142 feet until it came to a stop well off the highway in the dooryard of a house on the easterly side of route 25, north of the Johnsons. Immediately after the impact both Gilleos were found at the place where their car came to rest, and both were intoxicated. The weather was clear, and there was nothing to interfere with the visibility of the driveway to the Johnson house.

The defendant claimed that when the Gilleos entered the Log Cabin they were not intoxicated, that while they were there they showed no signs of being under the influence of liquor, and that they were not intoxicated when they left. He also claimed that the Pierce car backed out of the driveway directly into the path of the Gilleo car and that the accident did not occur because of Floyd F. Gilleo's intoxication.

Section 4307 reads as follows: "If any person, by himself or his agent, shall sell any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, shall thereafter injure the person or property of another, such seller shall pay just damages to the person injured, to be recovered in an action under this section." In *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 56, 119 A.2d 325, we examined the history of this statute. Briefly, it was enacted in its present form in 1933 as a part of the so-called Liquor Control Act and became effective upon the repeal of the eighteenth (prohibition) amendment. Cum. Sup. 1935, § 1088c. We said (p. 57) that to establish a cause of action under the statute against the seller of intoxicating liquor, proof of three elements was required: (1) a sale of intoxicating liquor (2) to an intoxicated person (3) who, in consequence of such intoxication, causes injury to the person or property of another. The court charged the jury to this effect. The defendant claims that such an interpretation renders the act unconstitutional because it imposes liability irrespective of any causal relation between the sale of the intoxicating liquor to an intoxicated person and the injury which follows as a result of the intoxication. Such an interpretation, so the defendant alleges, imposes liability without fault and makes the statute arbitrary, vague and unreasonable

and therefore violative of the equal protection and due process provisions of the federal and state constitutions. U.S. Const. Amend. XIV § 1; Conn. Const. Art. I §§ 1, 12.

The defendant has advanced no compelling reason why the construction which we have already given the language of the statute should be changed and the statute construed so as to require proof of a causal relation between the sale of intoxicating liquor and the intoxication which caused injury. It is true that with respect to this particular feature, the wording of § 4307 differs radically from its predecessor, § 2815 of the Revision of 1918, which did require such proof. *London & Lancashire Indemnity Co.* v. *Duryea,* supra, 57. As we stated in the *Duryea* case, however, the language of the statute is plain and unequivocal. Courts must presume that when the legislature chose the language contained in § 4307, instead of the drastically different language in § 2815, it intended to effect a change in the statute law. *State ex rel. Markley* v. *Bartlett,* 130 Conn. 88, 93, 32 A.2d 58. It is a cardinal rule, of course, that statutes should be construed by the courts in a way to give them validity. But that does not permit a court to distort the words used in order to wring out of them a desired interpretation. *Watrous* v. *Connelly,* 141 Conn. 257, 263, 105 A.2d 654; *Lenox Realty Co.* v. *Hackett,* 122 Conn. 143, 150, 187 A. 895. The construction placed upon the statute must stand. The trial court correctly charged the essentials of proof necessary to establish a case within it.

The constitutional validity of § 4307 depends upon whether it is a proper legislative exercise of the police power of the state. The twenty-first amendment to the federal constitution, which repealed the prohibition amendment, "allows the exercise of very

broad police powers by the states with respect to alcoholic liquors. The states may absolutely prohibit the manufacture, transportation, sale or possession of such liquors within their borders or they may permit these activities under conditions prescribed by their legislatures. To these ends they can adopt such measures as they may deem reasonably appropriate. *Ziffrin, Inc.* v. *Reeves,* 308 U.S. 132, 138, 60 S. Ct. 163, 84 L. Ed. 128; *Francis* v. *Fitzpatrick,* 129 Conn. 619, 621, 30 A.2d 552. Because of the danger to the public health and welfare inherent in the liquor traffic, the police power to regulate and control it runs broad and deep, much more so than the power to curb and direct ordinary business activity. *Mugler* v. *Kansas,* 123 U.S. 623, 662, 8 S. Ct. 273, 31 L. Ed. 205; *Crane* v. *Campbell,* 245 U.S. 304, 307, 38 S. Ct. 98, 62 L. Ed. 304; see *State* v. *Porter,* 94 Conn. 639, 643, 110 A. 59; *State* v. *Conlon,* 65 Conn. 478, 486, 33 A. 519; 30 Am. Jur. 278, § 40." *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674, 88 A.2d 388; *Francis* v. *Fitzpatrick,* supra. Since the liquor business is one which can be dangerous to the public health, safety and morals, the range of legislative power to deal with it necessarily is a very wide one. It has been so recognized by the courts for a long time. The multitude of automobiles on the public highways enhance the danger. For many years the sale of intoxicating liquor to one already intoxicated has been prohibited by statute. General Statutes § 4293.[1] For a great many years

---

[1] For earlier forms of this statute, see Rev. 1918, § 2795; Rev. 1902, § 2696; Rev. 1888, § 3092; Rev. 1875, p. 520 § 42; Public Acts 1872, c. 99 § 6; for still earlier related legislation, see Statutes, 1866, p. 691 §§ 3, 4; Statutes, 1854, p. 813 §§ 3, 4, p. 816 § 13; Statutes, 1849, p. 597 §§ 3, 4, 6, p. 600 § 13; Statutes, 1838, p. 592 § 2, p. 593 § 3, p. 595 § 3; Statutes, 1821, p. 443 §§ 2, 3; Statutes, 1808, p. 640 § 3, p. 641 § 7; Statutes, 1796, pp. 409, 410; Statutes, 1784, pp. 241, 242.

also, civil liability has been imposed by statute upon the violator of § 4293 and its predecessors. Rev. 1918, § 2815; Rev. 1902, § 2713; Rev. 1888, § 3101; Public Acts 1882, c. 107, pt. 6, § 12; Rev. 1875, p. 269, § 9; Public Acts 1872, c. 99, § 8.

It is a universally accepted rule of constitutional law that the legislative department in the use of its police power is the judge, within reasonable limits, of what the public welfare requires. The court's function in examining the constitutional aspect of police legislation is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection of the laws. *Schwartz* v. *Kelly,* 140 Conn. 176, 179, 99 A.2d 89; *Carroll* v. *Schwartz,* 127 Conn. 126, 129, 14 A.2d 754. Courts cannot question the wisdom of police legislation and must accord to the legislature a liberal discretion, especially in matters involving potentialities generally recognized as dangerous. *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674, 88 A.2d 388; *Beckanstin* v. *Liquor Control Commission,* 140 Conn. 185, 192, 99 A.2d 119.

In enacting § 4307 and its predecessors, the legislature created an action unknown to the common law. *Fleckner* v. *Dionne,* 94 Cal. App. 2d 246, 251, 210 P.2d 530; *Howlett* v. *Doglio,* 402 Ill. 311, 318, 83 N.E.2d 708; *Beck* v. *Groe,* 245 Minn. 28, 35, 70 N.W.2d 886; *Tarwater* v. *Atlanta Co.,* 176 Tenn. 510, 512, 144 S.W.2d 746; *Demge* v. *Feierstein,* 222 Wis. 199, 203, 268 N.W. 210; 48 C.J.S. 718, § 432. The obvious purpose of the legislation is to aid the enforcement of § 4293 by imposing a penalty, in the form of a civil liability, in addition to the penalty

prescribed in that section, and to protect the public. While it may be said that in one sense the statute is penal, nevertheless it is primarily remedial because it gives a remedy enforceable by an individual in a civil action and allows the recovery of damages in an amount commensurate with the injuries suffered. *Daury* v. *Ferraro,* 108 Conn. 386, 395, 143 A. 630; *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 366, 114 A. 104; *Huntington* v. *Attrill,* 146 U.S. 657, 667, 13 S. Ct. 224, 36 L. Ed. 1123; 50 Am. Jur. 35, § 17. When § 4307 is compared with its predecessor, § 2815 of the 1918 Revision, it appears that the legislature has removed, by the adoption of § 4307, the necessity of proof that a sale in violation of § 4293 produced the intoxication which resulted in the injury. In other words, instead of requiring proof that the sale of any particular drink in violation of § 4293 caused or contributed to the intoxication in consequence of which injury to another person resulted, the legislature reasonably could find that in the great variety of factual situations encompassed by the terms of § 4307 there would always be such a reasonable relationship between a sale in violation of the law and the injury consequent upon the intoxication of the one to whom the sale was made as would warrant a departure from common-law concepts of proximate causation and the substitution of a new basis of liability. The legislature in the exercise of its police power can alter or abolish accepted principles of common-law liability to pay compensation for injuries without violating constitutional mandates. *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 147, 93 A. 245; *Silver* v. *Silver,* 108 Conn. 371, 377, 143 A. 240; *Levy* v. *Daniels' U-Drive Auto Renting Co.,* 108 Conn. 333, 337, 143 A. 163; *Verrilli* v. *Damilowski,* 140 Conn. 358, 360, 100 A.2d 462. Many states have adopted similar leg-

islation by a great variety of language but with a common purpose and effect. See 30 Am. Jur. 576, § 612; 48 C.J.S. 717, § 431; 5 Blashfield, Automobile Law & Practice (Perm. Ed.) p. 68. The general view is that such legislation is remedial in character and that it should be liberally construed "to suppress the mischief and advance the remedy." *Hahn* v. *Ortonville,* 238 Minn. 428, 436, 57 N.W.2d 254, and cases cited; 30 Am. Jur. 576, § 613.

The defendant argues that the interpretation of the statute as charged by the court would fix liability upon one who sells alcoholic liquor to an intoxicated person who does not consume the liquor but thereafter by reason of his intoxication causes an injury. It is true that the delict contemplated by § 4307 is the sale of intoxicating liquor to an intoxicated person and that the statute imposes liability without proof that the alcoholic liquor thus sold caused or contributed to the intoxication in consequence of which an injury resulted. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 59, 119 A.2d 325. As stated heretofore, the legislature in the exercise of its police power can change principles of common-law liability. Constitutional justification for such legislation must be found in the nature of the problem confronting the legislature, the purpose to be accomplished, and the means adopted to accomplish it. *Amsel* v. *Brooks,* 141 Conn. 288, 295, 106 A.2d 152. The constitutional validity of this statute must be tested by its effect upon the defendant under the facts of the instant case and not under some other circumstances. *Fleming* v. *Rhodes,* 331 U.S. 100, 104, 67 S. Ct. 1140, 91 L. Ed. 1368; *United Public Workers of America* v. *Mitchell,* 330 U.S. 75, 90, 67 S. Ct. 556, 91 L. Ed. 754; *State* v. *Sinchuk,* 96 Conn. 605, 615, 115 A.

33; *Rindge* v. *Holbrook,* 111 Conn. 72, 76, 149 A. 231.

Even if we considered the question on the state of facts suggested by the defendant, it is to be remembered that he is a permittee engaged in selling alcoholic beverages in a tavern located on a public highway. It is fair to assume that some of his customers come and go in automobiles during business hours in both daylight and darkness. His permit is a matter of privilege and not a matter of right. General Statutes § 4236; *Beckanstin* v. *Liquor Control Commission,* 140 Conn. 185, 192, 99 A.2d 119. The drunken operator of a motor vehicle is a menace to safety on the highway. It is not unreasonable for the legislature to provide, in the light of these circumstances, that a permittee who sells alcoholic liquor to one already under its influence, thus violating the law, cannot be heard to say that the particular drink or drinks which he sold did not cause or contribute to the intoxication and resulting injury. If one desires to engage in the liquor business and secures upon his own application a permit to do so, he assumes of necessity the risk of a great variety of situations which could impose liability upon him. He is bound to presume that the liquor which he sells will be consumed sometime. The act does not impose absolute liability upon the permittee but leaves to him a number of defenses. To hold that the act is unconstitutional unless it is interpreted to require proof of a causal relationship between the sale of the liquor and the intoxication in consequence of which the injury is inflicted would be to destroy in large part the remedial effect which the statute was intended to have in an almost infinite variety of situations. We hold that, in the light of the mischief sought to be suppressed and the remedy sought to be accorded, § 4307 is not arbitrary or unreason-

able and that it is a valid legislative exercise of the police power of the state. The constitutionality of dram shop legislation in other states, embracing a variety of provisions, has been upheld generally by the courts. *Shell Oil Co.* v. *Superior Court,* 213 Cal. 596, 598, 2 P.2d 801; *Franklin* v. *Schermerhorn,* 8 Hun (N.Y.) 112, 113; *Bertholf* v. *O'Reilly,* 74 N.Y. 509, 517; *Garrity* v. *Eiger,* 272 Ill. 127, 134, 111 N.E. 735, aff'd, 246 U.S. 97, 103, 38 S. Ct. 298, 62 L. Ed. 596; *Kennedy* v. *Garrigan,* 23 S.D. 265, 267, 121 N.W. 783; Joyce, Intoxicating Liquors, § 420.

The defendant alleges that the trial court erred "in instructing the Jury to the effect that the rules of proximate causation had no application to actions under the Dram Shop Act." The trial court charged the jury that the action against the defendant was based entirely on § 4307, that it differed from, and was not, a negligence action, and that the plaintiffs could not recover on the statute unless they proved all the elements fixed by it. After reading the statute, the court outlined these elements as follows: "First of all, there must be a sale that must be made by the person sought to be charged or by his agent. Secondly, it must be a sale of alcoholic liquor. Thirdly, the sale must be made to an intoxicated person. That is, you must find, in order to impose any liability under this statute, that the person to whom the liquor was sold was intoxicated at the time the sale was made to him . . . . Next, that the purchaser, that is, the intoxicated person to whom the liquor was sold, in consequence of his intoxication, that is because of his intoxication and not because of some other reason shall thereafter injure the person or property of another person. It is where those conditions exist that the statute says the seller is liable to the person injured." After a brief sum-

mary of the claims as to the evidence, the trial court stated the issue to be "whether the Pierces' injuries were in consequence of such intoxication ..., that is, the intoxication of Floyd F. Gilleo, and not from some other negligent act of his which may have been alleged against him in the negligence cases." After again stating that the plaintiffs' action against the defendant was solely on the statute, as distinguished from any negligence claimed in the actions brought against Floyd F. Gilleo, the court ended its charge on this feature of the case by saying: "[T]here must be a sale; it must be to an intoxicated person; and, then, by reason of that intoxication, the injury must follow."

The statute does not require proof that the sale of intoxicating liquor produced or contributed to the intoxication of the person to whom it was sold. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 57, 119 A.2d 325. The refusal of the court to charge that it did, as requested by the defendant, was correct. The statute, however, does require proof that the injuries complained of were in consequence of the intoxication of the person to whom the liquor was sold. The court in its charge used the statutory phrase "in consequence of such intoxication" and, later, the phrase "by reason of that intoxication," in explaining to the jury the causal relationship between the intoxication of the person inflicting the injuries and the injuries themselves. In the absence of any statutory definition of these terms, they must be given their common meaning. *Hallenbeck* v. *Getz,* 63 Conn. 385, 388, 28 A. 519; General Statutes § 8890. For the plaintiffs to establish liability under the statute, it was essential for them to prove that the intoxication proximately caused the injuries for which they sought damages.

*Economy Auto Ins. Co.* v. *Brown,* 334 Ill. App. 579, 583, 79 N.E.2d 854; *Neu* v. *McKechnie,* 95 N.Y. 632, 635; *Healey* v. *Cady,* 104 Vt. 463, 466, 161 A. 151. The intoxication need not be the sole proximate cause, so long as it is a substantial factor in producing the injuries. *Hahn* v. *Ortonville,* 238 Minn. 428, 432, 57 N.W.2d 254. The charge given by the court on the subject of causation, although the term "proximate cause" was not used, was framed in terms which a jury could only understand as requiring the plaintiffs to prove, in order to recover a verdict, that there was a proximate causal relation between the intoxication of the person to whom the liquor had been sold and the injuries. In this respect the charge was correct and adequate.

The defendant assigns error in the denial by the trial court of his motions to set aside the verdict and for judgment notwithstanding the verdict. We shall first discuss this claim as it pertains to the issue of liability, for the defendant also asserts that the damages awarded were excessive. The claim as to liability is concerned with whether the evidence established, as the statute requires, that there was a sale to an intoxicated person and that the plaintiffs' injuries were inflicted "in consequence of such intoxication." The claim also involves the issue whether the jury could have found that the allegedly intoxicated driver ran into the plaintiffs' Oldsmobile while it was parked off the traveled portion of the highway. In a case such as this, it is difficult to establish by direct or testimonial evidence, that is, by witnesses who state facts which came under their personal observation, precisely to whom the intoxicating beverage was sold and that the purchaser of it was already intoxicated when he bought it. See 1 Wigmore, Evidence (3d Ed.) p. 399. Human nature

being what human experience shows it to be, people rarely admit that they are under the influence of liquor or that they violate the law. Difficulty in securing testimonial evidence does not, however, excuse the necessity of proof sufficient to establish a case. It compels, rather, a resort to the establishment, by direct testimonial evidence, of circumstances from which logical and reasonable inferences of other material facts can be fairly drawn. In a civil case, "proof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact." *Dickson* v. *Yale University,* 141 Conn. 250, 253, 105 A.2d 463, and cases cited. In other words, the pleadings may admit, and witnesses may testify to, facts which in the light of human experience lead by the process of inference reasonably and logically to other facts. This process of inference is peculiarly a jury function, the raison d'etre of the jury system.

We examine the trial court's ruling on the defendant's motions on the basis of the evidence, not the finding. *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 582, 102 A.2d 345. The defendant concedes that on September 28, 1952, he owned and conducted Pat's Log Cabin, where intoxicating liquors were sold to be drunk on the premises. The evidence in the appendices shows that he was at the Log Cabin when the Gilleos, who had left Bridgeport a short time before, came in for a drink, as was their custom on fishing trips to Lake Zoar. Floyd F. Gilleo, who was the uncle of Floyd H. Gilleo and the driver of the car, had two glasses of beer. No one testified that Floyd F. Gilleo or anyone else paid

for the beer or that Floyd F. Gilleo was intoxicated before he drank it. There was, however, evidence that the accident occurred very shortly after the Gilleos left Pat's Log Cabin and that immediately after the accident they both had a strong odor of liquor about them and were intoxicated, so much so, in the case of Floyd F. Gilleo, that he had difficulty walking and talking. Floyd F. Gilleo testified that his condition of sobriety was the same at the time he took the first beer as it was at the time of the collision. The defendant was present in court during the trial but was not called to testify as a witness in his own behalf. Parenthetically, this circumstance does no more than to permit an inference that if he had been called in his own defense and questioned on the matter in issue, his testimony would have been unfavorable to his case. *Halpine* v. *Halpine,* 138 Conn. 578, 581, 87 A.2d 146. The correctness of the denial of the motion to set aside the verdict or for judgment notwithstanding the verdict must be tested by the evidence most favorable to the plaintiffs. *Feir* v. *Hartford,* 141 Conn. 459, 463, 106 A.2d 723.

In *State* v. *Stanton,* 37 Conn. 421, an accused was charged with keeping for sale intoxicating and adulterated liquors in violation of the statute. Rev. 1866, p. 705, § 46. Witnesses testified to the effect that men and boys were frequently seen going into the premises occupied by the accused and coming out intoxicated, that there were decanters on the shelves, and that people had been seen standing at the counter as if drinking. The issue was whether this testimony was admissible as tending to prove that liquors were kept and sold. We said (p. 423): "That was one of the facts which it was proper and competent for the state to prove by any circumstances from which an

inference of the fact could be drawn. The circumstances which the state offered to prove were such as ordinarily and notoriously indicate the fact sought to be proven. It cannot with truth be said that they did not tend to prove it." Let us consider whether the jury in the instant case could have reasonably and logically drawn the inference that there was a sale of an alcoholic beverage to a person who was intoxicated. The Gilleos on their way from Bridgeport entered a place of business publicly conducted for the sale of alcoholic beverages to be consumed on the premises. They drank two beers apiece. The stop at the Log Cabin was one they customarily made. The defendant was there at the time. It is not an unreasonable inference that the Gilleos bought the beer, for ordinarily one engaged in selling liquors does not give it away. This inference is supported by the failure of the defendant to testify to the contrary. The complaint alleged a sale by the defendant or his agent. In the absence of any evidence to the contrary, the jury reasonably could have inferred that a sale of at least one beer was made to Floyd F. Gilleo, who was the uncle of Floyd H. Gilleo and the driver of the car. To say that the proof must show by direct evidence that Floyd F. Gilleo ordered the beer and paid for it is to insist upon a refinement which would make the statute practically inoperative under the circumstances. See *Staples* v. *Lucas,* 142 Conn. 452, 457, 115 A.2d 337.

Furthermore, viewing the statute as essentially remedial and consequently giving it a liberal construction, we can assume that the legislature, by its use of the word "sell" in § 4307, which was adopted in 1933 (Cum. Sup. 1935, § 1088c), meant "purvey" or "furnish" rather than a sale in the strict sense of the term. Any other construction would have

rendered the statute nugatory as applied to taverns and restaurants, because prior to the passage in 1951 of § 2859d of the 1955 Cumulative Supplement the dispensing of food or drink in a restaurant for consumption on the premises was a service, not a sale. *Albrecht* v. *Rubinstein,* 135 Conn. 243, 245, 63 A.2d 158. The purveying or furnishing of intoxicants to be consumed on the premises would not have constituted a sale in the technical sense. We conclude that the purveying or furnishing of intoxicants for a price to a person, or to a group of two or more obviously together in one company, would be a sale to that person, or to each member of the group, within the terms of § 4307. The charge of the court upon this feature of the case was correct and substantially complied with the request of the defendant for a charge to the effect that proof of a sale to Floyd F. Gilleo, the driver, was essential to establish a cause of action.

The evidence to the effect that immediately following the accident the Gilleos were in an advanced state of intoxication permits a reasonable inference that, since the two beers drunk such a short time before would not have made them so obviously drunk, they must have been intoxicated when they drank them. *Ackerman* v. *Kogut,* 117 Vt. 40, 44, 84 A.2d 131. The inference that they were intoxicated when they consumed the beer finds support also in Floyd F. Gilleo's statement that his condition of sobriety when he took the beer was the same as it was when the collision occurred. Then too, the failure of the defendant to deny this inference lends support to it. The test is whether the evidence, fairly and impartially considered, would be likely to induce in the minds of twelve men of ordinary intelligence, attentively considering it and using common-sense

logic, a reasonable belief that it is more probable than otherwise that the fact in issue is true. *LeBlanc v. Grillo,* 129 Conn. 378, 382, 28 A.2d 127; *Robinson v. Southern New England Telephone Co.,* 140 Conn. 414, 420, 101 A.2d 491. We conclude that the jury could reasonably have found that there was a sale to an intoxicated person within the terms of the statute.

The defendant, alleging error on his motions, also presses the claim that the jury could not have found that the plaintiffs were injured in consequence of the intoxication of Floyd F. Gilleo. In connection with this claim, we must bear in mind that this action was tried together with the ones, founded upon negligence, in which the Pierces sought recovery from Floyd F. Gilleo, he counterclaimed for recovery from the Pierces, and Floyd H. Gilleo sought recovery from the Pierces. The jury left the parties where they found them, denying recovery to any of them on their claims founded on negligence. From this result the defendant maintains that of the several apparent alternatives only one was possible, to wit, that the jury found that neither Floyd F. Gilleo nor the Pierces were negligent. One of the allegations of negligence in the Pierces' complaint against Floyd F. Gilleo was that he was driving while under the influence of intoxicating liquor in violation of the statute. General Statutes § 2412. The defendant argues that the jury, by returning a verdict in favor of Floyd F. Gilleo, must of necessity have absolved him from this charge. How then, the defendant asks, can he, the defendant, be liable under § 4307? The defendant's explanation of the verdicts is not the only one possible. The jury might have found all the parties negligent and thus denied recovery to any of them. This would not prevent the Pierces from recovering in the present action against the

defendant under § 4307 because, even if we assume that the defense of contributory negligence would be good in such an action, it was not pleaded and consequently was not in this case. While the action brought by the Pierces against Floyd F. Gilleo, the counterclaim by him, and the action by Floyd H. Gilleo against the Pierces were tried to the same jury as the present action, they involved defendants whose liability, if any, was basically different. If these cases had been tried separately, and we believe that they should have been, a decision on the issue of liability in the negligence actions could bind only the parties to those actions and the persons who stood in privity with them. *Fox* v. *Schaeffer*, 131 Conn. 439, 448, 41 A.2d 46. Consequently, the results reached by the jury in the actions founded on negligence are not conclusive in any way in this action under § 4307. The trial court was correct in its refusal to grant the defendant's motions on this claim.

The defendant alleges further that the court erred in denying his motions because the evidence did not support the plaintiffs' claim that Floyd F. Gilleo drove his car into their car while it was standing still in the Johnson driveway. In this connection he submitted an interrogatory asking the jury to find, in effect, whether the Pierces' automobile was standing parked in the Johnson driveway off the traveled portion of route 25 when the Gilleo car struck it. The court refused to submit this interrogatory, and the defendant charges error. The information sought pertained to a subordinate fact and not to an ultimate conclusion. The trial court has a wide discretion in dealing with interrogatories of this nature, and we cannot say that this discretion was abused. *Meglio* v. *Comeau*, 137 Conn. 551, 555, 79 A.2d 187.

The defendant complains of the court's charge on this feature of the case on the ground that it assumed facts which were different from those set forth in his request to charge and were not supported by the evidence. The charge given does no more than state the plaintiffs' claim that their car, when struck, was standing motionless in the driveway. Furthermore, there is evidence from which the jury could have found that it was. There was testimony that the Pierces got into their car, that Mrs. Pierce put the key in the ignition, shifted the gear to a neutral position and turned the ignition key, and that the dial light was still flashing to indicate that the emergency brake had not been released—and the car was still standing—when they lost consciousness, presumably from the impact of the two cars which produced their injuries. There was other evidence, such as the position of the plaintiffs' car in the driveway after the collision, tire burns and debris in the driveway, and the nature of the damage to the two automobiles, which lends support to a finding that the plaintiffs' car was standing in the driveway as they claimed. Furthermore, even if the plaintiffs had been backing their car out into the highway, into the path of the approaching Gilleo car, as the defendant claims, there was evidence from which the jury could have found that but for the intoxicated condition of the driver of the Gilleo car he would have sounded a warning and stopped or turned to avoid the collision. The defendant avails nothing on this score.

The last alleged error for discussion is the refusal of the trial court to set aside the verdict of $10,000 for the plaintiff Gordon D. Pierce on the ground that it was excessive. The amount of an award of damages is within the province of the jury, and the refusal of the trial court to set it aside as excessive

lends weighty support to its propriety. *Gorczyca* v. *New York, N.H. & H.R. Co.*, 141 Conn. 701, 703, 109 A.2d 589, and cases cited. The test is whether the amount falls within the necessarily uncertain limits of just damages or so shocks the sense of justice as to compel a conclusion that the jury were swayed by partiality, prejudice, corruption or mistake. Ibid. The plaintiff Gordon D. Pierce was injured on September 28, 1952, when he was thrown from his automobile to the ground. He was taken by ambulance in an unconscious state to the Danbury Hospital. His condition was diagnosed as cerebral concussion, a laceration of the scalp six centimeters long, requiring six sutures, and a fracture of the sixth dorsal vertebra. He remained in the Danbury Hospital until October 5, 1952, when he was discharged for further treatment. During the first four days he was completely disoriented, agitated and nervous. On October 5, he was taken to a hospital in Brooklyn, New York, where he remained until October 12, 1952. For six months he suffered pain in his head, back and chest, dizziness, and headaches, necessitating sedatives. He was away from his work for five weeks and returned to it against medical advice. At the end of eight months his nervous condition cleared up and he was free from pain. His salary was $4000 a year, and his medical and hospital expenses totaled $445.56. The damage to his automobile was $1750. The jury could infer from the scar left by the laceration that it would be permanent. *Gorczyca* v. *New York, N.H. & H.R. Co.*, supra, 704. The amount of the verdict in the light of the rule stated was not excessive.

There is no error.

In this opinion INGLIS, C. J., DALY and SHAPIRO, Js., concurred.

O'SULLIVAN, J. (dissenting). Section 4307 (as amended, Cum. Sup. 1955, § 2172d) imposes liability upon an individual who, by himself or his agent, sells alcoholic liquor to an intoxicated person, whenever that person, in consequence of his intoxication at the time of the sale, thereafter causes injury to another. This liability runs in favor of the person sustaining the injury. The delict, then, upon which liability rests is the sale. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 59, 119 A.2d 325. Causal connection between the delict and the injury is not an essential to recovery. Thus, § 4307 provides for the exaction of a penalty, since it creates an extraordinary liability against a wrongdoer in favor of a total stranger to the wrongdoing. And, it should be noted, the penalty is a fluctuating sum, fixed, in each instance, at the figure which represents fair and adequate compensation for the injured person.

It must be conceded, of course, that public policy permits the General Assembly to regulate the sale of intoxicating liquors and to provide civil as well as criminal penalties for violations of the law. But this power of regulation by government is not unlimited. *State* v. *Heller,* 123 Conn. 492, 497, 196 A. 337. To be sure, the wisdom and the expediency of legislation are for the General Assembly to resolve, and the courts have no concern with either. Nevertheless, in passing upon regulations purporting to have been enacted under the police power, the courts should declare them invalid when it appears that they are manifestly oppressive. *State* v. *Nelson,* 126 Conn. 412, 422, 11 A.2d 856.

The oppression which marks § 4307 lies in the lack of a reasonable ceiling upon the size of the penalty. The penalty has no confines; it is circumscribed by no boundaries. The statute, exposing the seller, as it

does, to unlimited liability, although his delict has nothing at all to do with the subsequent injury to another person, passes far beyond the realm of reasonableness. To compel the seller, in the case at bar, to respond to a judgment of $35,000 in favor of two persons, neither of whom had been harmed in any manner by any wrongdoing of his, smacks of the grossest oppression and inevitably leads to the conclusion that the statute which allows such a result is, and ought to be declared, void. No penalty should be held valid if, as here, it is flagrantly oppressive and disproportionate to the delict that has been committed. *Walkerton* v. *New York, C. & St. L. R. Co.*, 215 Ind. 206, 215, 18 N.E.2d 799; *Gooch* v. *Rogers*, 193 Ore. 158, 184, 238 P.2d 274.

For the foregoing reason, which need not be amplified, and for other reasons, which need not be mentioned, I am unable to agree with my colleagues.